STATE OF NORTH CAROLINA v. JAMIE LAMONT WEAVER, AND GARY WILLIAMS,
DEFENDANTS

No. COA95-782

(Filed 6 August 1996)

1. **Kidnapping and Felonious Restraint § 18 (NCI4th)— victim moved as part of another felony—no . removal or restraint sufficient to constitute kidnapping**

   The trial court erred in failing to dismiss the charge of kidnapping against both defendants where it was necessary for defendants to move the victim from a parking lot to her hotel room in order to effectuate their robbery because the victim's car keys and money were in the hotel room; defendants moved the victim only as far as necessary to complete the robbery and promptly released her; and there was thus no restraint or removal more than that which was an inherent, inevitable part of the commission of another felony. N.C.G.S. § 14-39.

   **Am Jur 2d, Abduction and Kidnapping § 32.**

   **Seizure or detention for purpose of committing rape, robbery, or similar offense as constituting separate crime of kidnapping. 43 ALR3d 699.**

2. **Criminal Law § 793 (NCI4th)— acting in concert—insufficient findings of intent required—instructions erroneous**

   The trial court erred in its instructions regarding the doctrine of acting in concert where the court charged that, if the jury should find from the evidence and beyond a reasonable doubt that defendant either acted by himself or acted together with named persons to commit the essential elements of the crimes charged, then it would be the jury's duty to return a verdict of guilty since those instructions allowed the jury to convict defendant of specific intent crimes without requiring the State to establish that defendant had the specific intent to commit those crimes.

   **Am Jur 2d, Trial §§ 1251, 1253.**

3. **Criminal Law § 793 (NCI4th)— acting in concert—erroneous instructions—defendant prejudiced on three of four charges**

   Though the trial court erred in its instructions on acting in concert, and one defendant was prejudiced by those instructions

on the charges of robbery with a dangerous weapon, felonious breaking or entering, and conspiracy because there was no evidence that defendant agreed to or was even aware of the plan to point a gun at the victim to force her to turn over her keys and money, such defendant was not prejudiced by the instruction on the charge of attempted larceny where there was sufficient evidence to show that he had the requisite intent permanently to deprive a car owner of it use, and it was unlikely that a different result would have been reached had the instructions been correctly given.

**Am Jur 2d, Trial § 1142.**

4. **Criminal Law § 793 (NCI4th)— acting in concert—erroneous instructions—defendant not prejudiced**

The trial court's erroneous instructions on acting in concert were not prejudicial to one defendant on the charges of robbery with a dangerous weapon, felonious breaking or entering, breaking or entering with intent to commit armed robbery, and attempted larceny where there was sufficient evidence to show that defendant was an active participant in every step of planning the crimes, and there was no a reasonable likelihood that a different result would have occurred at trial had the jury been instructed correctly.

**Am Jur 2d, Trial § 1142.**

**Supreme Court's views as to prejudicial effect in criminal case of erroneous instructions to jury involving burden of proof or presumptions. 92 L. Ed. 2d 862.**

5. **Criminal Law § 314 (NCI4th)— defendant's statements admissible against codefendant—joinder proper**

The trial court did not err in allowing the State's motion to join both defendants for trial, since statements by one defendant about the circumstances surrounding the attempted theft of a car were admissible against the other defendant, and no objection or request for limiting instruction was made with respect to the testimony. N.C.G.S. § 15A-926(b)(2)(a).

**Am Jur 2d, Actions §§ 136, 137.**

**What constitutes statement against interest admissible under Rule 804(b)(3) of Federal Rules of Evidence. 34 ALR Fed. 412.**

**6. Indictment, Information, and Criminal Pleadings § 55 (NCI4th)— minor difference between indictment and evidence—no fatal variance**

There was no fatal variance between the indictment and proof where defendant was charged with attempted larceny of a car from "Finch-Wood-Chevrolet-Geo, Inc.," and the evidence showed that Finch-Wood Chevrolet had custody of the car, but the evidence did not show that Finch-Wood was incorporated or that Finch-Wood Chevrolet was also known as Finch-Wood Chevrolet-Geo, since defendant did not demonstrate or argue that any prejudice resulted from the minor difference between the indictment and the evidence at trial.

**Am Jur 2d, Indictments and Informations § 273.**

Appeal by defendants-appellants from judgments entered 24 February 1995 by Judge Frank R. Brown in Halifax County Superior Court. Heard in the Court of Appeals 26 March 1996.

*Attorney General Michael F. Easley, by Assistant Attorney General Jill Ledford Cheek, for the State.*

*Hux, Livermon & Armstrong, by James S. Livermon, Jr., for defendant-appellant Weaver.*

*Law Office of Jimmie R. "Sam" Barnes, by Laura-Jean Alford, for defendant-appellant Williams.*

WYNN, Judge.

On 25 July 1994, defendants Jamie Lamont Weaver ("Weaver") and Gary Williams ("Williams"), along with Barry McNeil ("McNeil") and Teddy Taylor ("Taylor") drove to the ACME-Oldsmobile Cadillac dealership in Roanoke Rapids, North Carolina in a car owned by Weaver. There, following their unsuccessful attempt to start a car belonging to the dealership, Weaver and Williams broke the window of a 1993 Cadillac owned by another dealership, and attempted to "hot wire" it. They were unsuccessful in doing so.

The next day, during the evening hours, Weaver, Williams and Taylor, along with Lonzy Barber ("Barber") drove to a Holiday Inn in Roanoke Rapids, whereupon they agreed to steal one of two Ford Explorers in the hotel parking lot. They saw a woman (later identified as Ms. Cynthia Figueroa) enter and exit one of the Explorers. After

determining that both Explorers had alarms, Weaver suggested that it would be easier for them to take Ms. Figueroa's keys to her vehicle than to hot wire the other Explorer.

Thereafter, they followed Ms. Figueroa in Weaver's car while she drove to two different hotels. Ms. Figueroa eventually returned to the Holiday Inn. While she checked in that hotel, Williams, Taylor and Barber watched her from Weaver's car, and Weaver watched from a pay phone nearby. During that time, Williams suggested pointing a gun at Ms. Figueroa to force her to give up her keys and money. Barber and Taylor objected; nonetheless, Williams took out a shotgun and gave a handgun to Taylor.

When Ms. Figueroa returned to her Explorer, Taylor approached her and after a brief interchange, pointed the handgun at her and demanded her money and the keys to the Explorer. Ms. Figueroa replied that her money and keys were in her hotel room, right in front of the Explorer. Taylor instructed her to go to the room, which was occupied by her two young children. After he entered the room with Ms. Figueroa, Williams followed, wearing a mask.

Once inside the room, Williams began to remove his belt. Ms. Figueroa asked Williams not to hurt her, stating that they could have anything they wanted. She gave her money to either Taylor or Williams. At that time, one of the men told her, "If you call the police, we'll kill you." Ms. Figueroa then handed the keys to her Explorer to Taylor and the two men ran to the Explorer and drove away in it. Ms. Figueroa called the front desk, and an employee of the Holiday Inn called the police, who arrived a short time later.

Meanwhile, Williams and Taylor drove to Garysburg, North Carolina, where they rejoined Weaver and Barber. Together, the four men rode North on Interstate 95 in the Explorer where they were soon followed by a police vehicle. They crossed the state line into Virginia, then exited I-95 with the police car still following them. Upon noticing that the police car had its blue light and siren on, Weaver sped up, but was forced to stop when the Explorer came to a rocky area and hit a piece of wood. They exited the Explorer, split up, and ran into the woods.

The next day, Weaver and Barber were apprehended by police officers when they attempted to take a cab from Virginia to North Carolina. On 28 July 1994, Taylor confessed to the events at the Holiday Inn.

**STATE v. WEAVER**

[123 N.C. App. 276 (1996)]

Defendants Weaver and Williams were indicted on charges of conspiracy to commit robbery with a dangerous weapon, first degree burglary, robbery with a dangerous weapon, second degree kidnapping, and attempted larceny. Both men were convicted of all charges, and sentenced to twenty-five years for second degree kidnapping, five years for felonious breaking or entering, and thirty years for robbery with a firearm, the sentences to be served consecutively. In addition, both men were sentenced to concurrent terms of ten years for felonious conspiracy, and two years for attempted larceny. From these judgments and commitments, defendants appeal.

The issues on appeal are whether the trial court erred by: (I) Denying both defendants' motions to dismiss their kidnapping charge; (II) submitting, as to both defendants, an incorrect jury instruction relating to the doctrine of acting in concert; (III) allowing, over defendant Williams' objection, the joinder of trials for Williams and Weaver; and (IV) failing to dismiss the charge of attempted larceny against defendant Weaver. We find no prejudicial error in part, vacate in part and reverse in part.

I.

[1] Both defendants contend that the trial court erred by failing to grant their motions to dismiss the charge of kidnapping. They argue that under precedent from the Supreme Court of North Carolina, their actions during the robbery were not sufficient to support a kidnapping charge. We are constrained to agree that our Supreme Court case law requires this result.

N.C. Gen. Stat. § 14-39 (Supp. 1995) sets forth the essential elements of kidnapping. That section states:

a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

(1) Holding such other person for a ransom or as a hostage or using such other person as a shield; or

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person.

(4) Holding such other person in involuntary servitude in violation of G.S. 14-43.2.

N.C.G.S. § 14-39. The State's indictments in this case charged both defendants with kidnapping Cynthia A. Figueroa for the purpose of facilitating the commission of a felony, to-wit: robbery with a dangerous weapon.

In *State v. Irwin*, 304 N.C. 93, 282 S.E.2d 439 (1981), our Supreme Court held that a conviction for kidnapping requires restraint or removal more than that which is an inherent, inevitable part of the commission of another felony. *Id.* at 102-03, 282 S.E.2d at 446. Our Supreme Court construed N.C.G.S. § 14-39 in this manner so as to avoid "punish[ing a defendant] twice for essentially the same offense, violating the constitutional prohibition against double jeopardy." *Id.* at 102, 282 S.E.2d at 446.

The facts in *Irwin* were as follows:

[The defendant] forced [the victim] at knifepoint to walk from her position near the fountain cash register to the back of the store in the general area of the prescription counter and safe. During this time two shots were fired by [a co-defendant] at the front of the store, causing [defendant] to flee. [The victim] was not touched or further restrained. All movement occurred in the main room of the store.

*Id.* at 103, 282 S.E.2d at 446. The defendant in *Irwin* forced the victim toward the back of the store in order to enable her to go to the prescription counter and open the safe. *Id.*

In determining whether the restraint present in a given case is more than that which is an inherent or inevitable part of another felony, "[t]he key question is whether the victim is exposed to greater danger than that inherent in the armed robbery itself or 'subjected to the kind of danger and abuse the kidnapping statute was designed to prevent.'" *State v. Johnson*, 337 N.C. 212, 221, 446 S.E.2d 92, 98 (1994) (quoting *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446).

The *Irwin* Court reversed the defendant's conviction for kidnapping because it was necessary for the defendant to move the victim in order to complete the felony of armed robbery. The *Irwin* Court stated:

> [The victim's] removal to the back of the store was an inherent and integral part of the attempted armed robbery. To accomplish defendant's objective of obtaining drugs it was necessary that [a store employee] go to the back of the store to the prescription counter and open the safe. Defendant was indicted for the attempted armed robbery of [the two store employees]. [The victim's] removal was a mere technical asportation and insufficient to support conviction for a separate kidnapping offense.

*Irwin*, 304 N.C. at 103, 282 S.E.2d at 446.

In *State v. Joyce*, 104 N.C. App. 558, 410 S.E.2d 516 (1991), *disc. review denied*, 331 N.C. 120, 414 S.E.2d 764 (1992), this Court upheld the denial of defendant's motion to dismiss the kidnapping charges against him. In *Joyce*, the facts were as follows:

> All victims in the case at bar were moved from one room to another room where they were confined. The removals were not an integral part of the crime nor necessary to facilitate the robberies, since the rooms where the victims were ordered to go did not contain safes, cash registers or lock boxes which held property to be taken.

*Id.* at 567, 410 S.E.2d at 521. The *Joyce* Court distinguished *Irwin* on the ground that the victims in *Joyce* did not need to be moved in order to complete the underlying robbery, as they did in *Irwin*. *Id.*

We find the case *sub judice* to be more closely akin to *Irwin* than *Joyce*. In the instant case, Taylor pointed a gun at Ms. Figueroa and demanded her car keys and her money. When Ms. Figueroa told Taylor that her keys and money were in her hotel room, it became necessary for her to enter the hotel room to retrieve them in order for the planned robbery to be completed. Upon leading Ms. Figueroa into her hotel room at gunpoint, the men took the keys and money from Ms. Figueroa and quickly left. There is no indication in the record that Ms. Figueroa was forcibly moved to her room for any reason other than to complete the underlying robbery. And, while the record indicates that Williams unbuckled his belt in the hotel room, this action alone requires too much of a leap in inference to conclude that Ms. Figueroa was exposed to a greater danger than that inherent in the robbery. As in *Irwin*, it was necessary for the defendants to move the victim in order to effectuate their robbery, because the desired property was elsewhere. As in *Irwin*, the defendants moved the victim only as far as necessary to complete the robbery, and promptly

released her. As a result, we find *Irwin* controlling, and hold that the trial judge erred in denying both defendants' motion to dismiss the kidnapping charges. As in *Irwin*, we must reverse both defendants' convictions on the charge of kidnapping.

## II.

**[2]** Both defendants next contend that the trial court erred in its instructions to the jury regarding the doctrine of acting in concert. We agree and hold that this error requires us to vacate certain of Weaver's convictions, but none of defendant Williams' convictions.

Again, we are guided by case law from our Supreme Court. In *State v. Straing*, 342 N.C. 623, 466 S.E.2d 278 (1996), the trial court, before instructing the jury on the substantive elements of each of the crimes charged, defined acting in concert as follows:

Now, there's a principle in our law known as acting in concert. For a person to be guilty of a crime it is not necessary that he himself do all of the acts necessary to constitute the crime. If two or more persons act together with a common purpose to commit a crime, each of them is not only guilty as a principle [sic] if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose or as a natural or probable consequence of the common purpose.

However, the mere presence of the defendant at the scene of a crime, even though he is in sympathy with a criminal act and does nothing to prevent its commission, does not make him guilty of the offense. To sustain a conviction of the defendant, the State's evidence must show and prove to you that the defendant was present actually or constructively with the intent to aid the perpetrator in the commission of the offense should his assistance become necessary, and that such intent was . . . communicated to the actual perpetrator.

*Id.* at 625-26, 466 S.E.2d at 279-80.

Within the instructions on the essential elements of first degree murder, robbery with a dangerous weapon, and kidnapping, the trial court in *Straing* included the following instruction: "[The State must prove beyond a reasonable doubt] that the defendant, *or someone with whom he was acting in concert*, [committed each of the essential elements of the charged offenses]." *Id.*

STATE v. WEAVER

[123 N.C. App. 276 (1996)]

On appeal, our Supreme Court in *Straing* found error in this instruction stating:

> A premise of our criminal law is that no person charged with a crime will be held criminally responsible unless the State proves beyond a reasonable doubt that the person possessed the *mens rea* or mental state forming an element of the crime charged. One substantive element of numerous offenses in this state is that the person charged possessed "specific intent" to commit the very crime for which the person is charged. Our legislature has included a specific intent element in each of the offenses of which defendant in the case *sub judice* was found guilty . . . . Thus, before the jury could properly render a verdict of guilty as to any of these specific intent crimes, it was required to find that defendant possessed the requisite specific intent.

*Id.* at 626-27, 466 S.E.2d at 280.

Regarding the doctrine of acting in concert, the Court in *Straing* stated:

> [Under the doctrine of acting in concert], each person acting pursuant to a common plan may be criminally responsible for all offenses that are a part of the course of criminal conduct pursuant to the common plan, even if each person does not commit the act or acts himself . . . . [T]he theory of acting in concert does not dispense with the requirement that the State prove that the defendant had the specific intent to commit the particular offense for which he is charged.

*Id.* at 627, 466 S.E.2d at 280; *State v. Blankenship*, 337 N.C. 543, 559, 447 S.E.2d 727, 736 (1994).

The *Straing* Court held that the instructions given did not require the State to prove the specific intent of each crime, and allowed the jury to convict the defendants without proving beyond a reasonable doubt that each defendant possessed the requisite specific intent. The *Straing* Court vacated the defendant's convictions on all specific intent charges. *Straing*, 342 N.C. at 627, 466 S.E.2d at 281.

In the instant case, the trial court in language quite similar to that in *Straing*, instructed the jury on acting in concert as follows:

> The Court instructs you that for a person to be guilty of a crime, it is not necessary that he himself do all of the acts necessary to constitute the crime. If two or more persons are acting together

in pursuance of a common plan and common purpose to rob, and one or more of them actually does the robbery, all would be equally guilty within the meaning of the law.

If two or more persons join in a purpose to commit a crime, each of them, if actually or constructively present is not only guilty as a principal if one or more commits that particular crime, but he's also guilty of any other crime committed by another in pursuance of a common purpose, that is the common plan to rob [sic] was a natural or probable consequence thereof.

Thereafter, the trial judge instructed the jury on the essential elements of kidnapping in relevant part as follows:

As to the defendant Gary Williams, I charge that if you find from the evidence and beyond a reasonable doubt that on July 26, 1994, *the defendant acting either by himself or acting together with Jamie Weaver, or Lonzy Barber, or Teddy Taylor* [committed the essential elements of kidnapping], *it would be your duty to return a verdict of guilty* of kidnapping.

(emphasis supplied). An identical instruction for defendant Weaver on the crime of kidnapping followed, substituting Weaver's name for Williams, and Williams' name for Weaver. Following instructions on the essential elements of the other crimes charged, the trial court inserted language virtually identical to the language italicized above.

In *Straing,* our Supreme Court held that the jury instructions given by the trial court constituted reversible error because the instructions allowed the jury to convict the defendant of specific intent crimes "without requiring the State to establish that the defendant had the specific intent to commit those crimes." *Id.* Similarly, the instructions in the case at bar allowed the jury to convict Weaver and Williams without finding that they had the specific intent to commit the crimes they were charged with.

Defendants were convicted of felonious conspiracy to commit robbery with a dangerous weapon, first degree burglary, robbery with a dangerous weapon, second degree kidnapping, and attempted larceny. Each of these are specific intent crimes. *See, e.g., State v. Surrett,* 109 N.C. App. 344, 348, 427 S.E.2d 124, 126 (1993) (kidnapping); *State v. Attmore,* 92 N.C. App. 385, 395, 374 S.E.2d 649, 656 (1988), *disc. review denied,* 324 N.C. 248, 377 S.E.2d 757 (1989) (robbery with a dangerous weapon); *State v. Gay,* 334 N.C. 467, 486, 434 S.E.2d 840, 851 (1993) (felonious breaking or entering); *State v.*

*Brayboy,* 105 N.C. App. 370, 374, 413 S.E.2d 590, 593 (1992) (holding that any attempt crime requires specific intent). As in *Straing,* the jury instructions regarding acting in concert constituted error. However, to merit a new trial, each defendant must establish prejudice by showing that there is a reasonable possibility that "had the instructional error on acting in concert not occurred, a different result would have been reached [at trial]." *Blankenship,* 337 N.C. at 562, 447 S.E.2d at 738-39; N.C. Gen. Stat. § 15A-1443(a) (1988).

### A. Defendant Weaver

[3] Defendant Weaver contends that he was prejudiced by the trial court's erroneous failure to give his requested jury instructions on the charges of: (1) Robbery with a dangerous weapon; (2) felonious breaking or entering; (3) conspiracy; and (4) attempted larceny. We agree as to the first three of these charges, and therefore vacate his convictions and remand for a new trial. We, however, find no prejudicial error as to his conviction on attempted larceny.

The State's evidence tended to show that defendant Weaver was not present when Williams first suggested to Taylor and Barber that they point a gun at Ms. Figueroa in order to ensure that she gave them her car keys and money. Although it was Weaver who checked the Explorers to see if they had alarms and first suggested to the group that it would be easier to take Ms. Figueroa's keys than to hot wire the Explorer, there is no evidence to suggest that he agreed, either explicitly or implicitly, with the plan, advanced by Williams, to point the gun at Ms. Figueroa in order to force her to turn over her keys and money. Indeed there is no evidence in the record that Weaver was even aware of the fact that a gun would be used. Instead, the evidence shows that Weaver acted as a lookout to determine when Ms. Figueroa left the hotel, and was not present when Williams suggested the group point a gun at Ms. Figueroa. In addition, the evidence shows that immediately before the robbery, Weaver, without knowledge of the plan to point a gun at Ms. Figueroa, moved away from the others and pointed out Ms. Figueroa's location to the group. In short, the evidence indicates that Weaver helped plan the robbery, but does not indicate he approved of, or was even aware of, the plan to point a gun at Ms. Figueroa.

We find that the evidence in this case, as in *Blankenship,* is close. Thus, because of the error in the trial court's instruction on acting in concert, the jury's findings of guilt on robbery with a dangerous weapon, felonious breaking and entering and conspiracy cannot

stand. *Blankenship*, 337 N.C. at 562, 447 S.E.2d at 738-39. Since there is a reasonable possibility that a different result would have been reached at trial had the instructions been correctly given, we must vacate Weaver's convictions on these charges. *Id.*

We, however, reach a contrary conclusion as to Weaver's conviction on the charge of attempted larceny. The essential elements of attempted larceny are: (1) An intent to take and carry away the property of another; (2) without the owner's consent; (3) with the intent to deprive the owner of his or her property permanently; (4) an overt act done for the purpose of completing the larceny, going beyond mere preparation; and (5) falling short of the completed offense. *See State v. Lively*, 83 N.C. App. 639, 351 S.E.2d 111 (1986), *disc. review denied*, 319 N.C. 461, 356 S.E.2d 10 (1987); *State v. McAlister*, 59 N.C. App. 58, 295 S.E.2d 501 (1982), *disc. review denied*, 307 N.C. 471, 299 S.E.2d 226 (1983).

The evidence supporting Weaver's conviction of attempted larceny stems from his conduct on the day before the incident with Ms. Figueroa. On that day, Taylor, McNeil, Williams, and Weaver attempted to steal a Cadillac belonging to Finch-Wood Chevrolet. Taylor testified regarding the attempt to steal the Cadillac as follows:

When we first got [to the dealership], [Weaver and Williams] . . . said they was [sic] going to the car and see, you know [sic], did the car have an alarm on it . . . . [Weaver and Williams] walked to the cars . . . [then] came over to [where McNeil and I were] and told us they couldn't—[Weaver] said he couldn't get the car started because the car had some kind of lock on it or something, he was going to keep trying, you know, so he could try to break it. Then after [Weaver and Williams] went back over there . . . we got to the back of the car where they was at [sic], both of 'em was [sic] in one car, [Williams] was in the back seat of a Cadillac and [Weaver] was in the front under the steering-wheel with a screwdriver or hammer or something. And then the window back glass was broken out and then we was like what's going on [sic], what's taking so long . . . .

According to Taylor's testimony, Weaver was an active participant in the attempt to steal the Cadillac, and was fully aware of the group's plan to take the Cadillac from its rightful owner and permanently deprive the owner of the car. As a result, if the jury believed Taylor's testimony, it could find that Weaver had the requisite specific intent to take and carry away the car with the intent to permanently deprive

the owner of its use. Had the jury disbelieved Taylor's testimony regarding the Cadillac it would have acquitted Weaver of attempted larceny. We find it highly unlikely that the jury believed Taylor's testimony, yet also believed that Weaver did not share the specific intent to steal the car. We therefore conclude that there is not a reasonable possibility that a different result would have been reached at trial had the instructions been correctly given. Accordingly, we find no prejudicial error regarding Weaver's conviction on attempted larceny.

### B. Defendant Williams

**[4]** Defendant Williams contends that *Blankenship* and *Straing* require reversal of his remaining convictions. We disagree.

Williams first assigns error to the instructions relating to robbery with a dangerous weapon. Robbery with a dangerous weapon requires showing "the specific intent to unlawfully deprive another of personal property by *endangering or threatening his life with a dangerous weapon." State v. Davis*, 340 N.C. 1, 12, 455 S.E.2d 627, 632, *cert denied,* —— U.S. ——, 133 L. Ed. 2d 83 (1995) (emphasis supplied).

Unlike Weaver, Williams was an active participant in every step of the planning of the robbery. The record indicates that Williams first suggested to Taylor and Barber that the men display a gun to force Ms. Figueroa to give them her keys and money. The record also indicates that Williams supplied a handgun for Taylor, and brought a sawed-off shotgun for himself.

That the jury convicted Williams of robbery with a dangerous weapon indicates that it believed the testimony of Taylor and Ms. Figueroa. Given the evidence in the record, it is unlikely that the jury could have believed Taylor's testimony, and the other evidence presented in the case, and not found that Williams had the specific intent to use a deadly weapon, due to his extensive role in the planning of the robbery. Accordingly, we find that there is not a reasonable likelihood that a different result would have occurred at trial had the jury been instructed correctly. We, therefore, find no prejudicial error in the trial court's instructions on defendant Williams' charge of robbery with a dangerous weapon.

Similarly, as to the charge of felonious breaking or entering against Williams, the State was required to show the specific intent to commit any felony or larceny therein. *State v. Gray*, 322 N.C. 457, 460, 368 S.E.2d 627, 629 (1988).

The State's indictment charged Williams with breaking or entering Ms. Figueroa's hotel room with the intent to commit armed robbery. As a result, the State was required to prove that Williams broke or entered Ms. Figueroa's hotel room with such intent.

As previously stated, Williams' role in the robbery of Ms. Figueroa was different from that of Weaver. If the testimony of Taylor and Ms. Figueroa is believed, Williams did, in fact, enter Ms. Figueroa's hotel room with the intent of committing the felony of armed robbery therein. By convicting Williams of the crime of breaking or entering, the jury demonstrated that it believed the testimony of Taylor and Ms. Figueroa. As a result, we find that there is not a reasonable likelihood that a different result would have occurred at trial had the jury been instructed correctly. This assignment of error is overruled.

Finally, Williams assigns error to the jury instructions on the charge of attempted larceny. For the reasons stated above regarding Weaver's assignment of error concerning the jury instructions on the attempted larceny charge, we find that there is not a reasonable possibility that a different result would have occurred at trial had the jury been correctly instructed. We find no prejudicial error in his conviction on this charge.

### III.

[5] Defendant Williams next contends that the trial court erred by allowing the State's motion to join Williams and Weaver for trial. We disagree.

N.C.G.S. § 15A-926(b)(2)(a) authorizes joinder of defendants where the state seeks to hold each defendant accountable for the same crimes. *State v. Rasor*, 319 N.C. 577, 581, 356 S.E.2d 328, 331 (1987). The trial court must grant severance, however, when necessary to ensure that a defendant receives a fair trial. *Id.*; N.C.G.S. § 15A-927(c)(2). The decision whether to grant the State's motion to try co-defendants jointly will not be disturbed absent an abuse of discretion. *Id.*

Williams contends that he was prejudiced by being tried jointly with Weaver because evidence was admitted which was admissible against Weaver but inadmissible against him. We disagree.

The evidence Williams complains of related to events leading up to the attempted theft of the Cadillac. Taylor testified that Weaver had discussed stealing a car in his presence, and that Weaver told him that he knew how to hot wire cars. Taylor further testified that Weaver

told him that they could take a stolen car to New York where Weaver's cousin could sell it.

Williams contends that these statements were inadmissible as to him. We disagree.

Evidence which tends to shed light on the events surrounding the commission of a crime is admissible. *State v. Morston*, 336 N.C. 381, 400, 445 S.E.2d 1, 11 (1994); *State v. Meekins*, 326 N.C. 689, 695-96, 392 S.E.2d 346, 349 (1990). Thus, Taylor's testimony regarding Weaver's desire to steal a car and the fact that Weaver knew how to hot wire cars was admissible to describe the circumstances surrounding the attempted theft of the Cadillac. In addition, in order for Williams to complain that this testimony was inadmissible as to him, he is required to object to the introduction of the evidence, or request a limiting instruction. Williams did neither. Since the evidence was admissible against Weaver, it was not error for the State to introduce the evidence against Williams absent an objection or request for a limiting instruction. *See State v. Coffey*, 326 N.C. 268, 286, 389 S.E.2d 48, 59 (1990), *appeal after remand*, 336 N.C. 412, 444 S.E.2d 431 (1994) (holding that admission of evidence which is competent for a restricted purpose without limiting instructions will not be held to be error in the absence of a request by the defendant for such limiting instructions).

We have examined defendant Williams' remaining assignments of error, and find them to be without merit.

IV.

[6] Defendant Weaver next contends that the trial court erred by refusing to dismiss the charge of attempted larceny when there was a fatal variance between the evidence at trial and the allegations in the indictment.

This contention is not properly before this Court. Weaver's assignment of error number eleven states that he assigns as error the following:

11. Denial of Defendant-Appellant Weaver's motion to dismiss the charge of attempted larceny in the indictment in Case No. 94 CrS 6407, on the ground that the evidence admitted at trial was insufficient to permit a reasonable juror to find that the State had proven all of the elements of this offense as charged in the indict-

ment against Defendant-Appellant Weaver beyond a reasonable doubt . . . .

This assignment of error does not allege a variance between the indictment and the proof at trial. Rather, this assignment of error challenges the sufficiency of the evidence.

N.C. R. App. P. 10(a) (1996) states:

Except as otherwise provided herein, the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10 . . . .

Weaver did not set out this argument in an assignment of error in the record. Thus, this issue is not properly before this Court. However, in the exercise of our discretion under Rule 2 of the Rules of Appellate Procedure, we elect to address Weaver's contention.

The indictment which charged Weaver with attempted larceny charged that he did "attempt to steal, take and carry away a 1993 Cadillac . . . the personal property of Finch-Wood Chevrolet-Geo Inc." At trial, the State's evidence did not show that the person which had custody and control of the car, identified as Finch-Wood Chevrolet, was incorporated. In addition, there was no testimony that Finch-Wood Chevrolet was also known as Finch-Wood Chevrolet-Geo.

In general, a variance between the indictment and the proof at trial does not require reversal unless the defendant is prejudiced as a result. *State v. Christopher*, 307 N.C. 645, 649-50, 300 S.E.2d 381, 384 (1983).

This Court has required that a defendant demonstrate that he or she was misled by a variance, or hampered in his/her defense before this Court will consider the variance error. *State v. Summerford*, 65 N.C. App. 519, 524-25, 309 S.E.2d 553, 557 (1983), *disc. review denied,* 310 N.C. 311, 312 S.E.2d 654 (1984).

In the instant case, Weaver cannot demonstrate, nor does he argue, that any prejudice resulted from the minor difference between the indictment and the evidence at trial. Accordingly, this assignment of error is overruled.

We have examined both defendants' remaining assignments of error, and find them to be wholly without merit.

Conclusion

The result is: We reverse the kidnapping convictions against both defendants; find no prejudicial error against Weaver on the conviction of attempted larceny and vacate all remaining charges against him; find no prejudicial error on all remaining charges against Williams.

DEFENDANT WEAVER:

Second degree kidnapping (No. 94 CRS 6405): Reversed.

Attempted larceny (No. 94 CRS 6407): No prejudicial error.

Felonious breaking or entering (No. 94 CRS 6403): New trial.

Robbery with a firearm (No. 94 CRS 6404): New trial.

Felonious conspiracy (No. 94 CRS 6402): New trial.

DEFENDANT WILLIAMS:

Second degree kidnapping (No. 94 CRS 6199): Reversed.

Attempted larceny (No. 94 CRS 7303): No prejudicial error.

Felonious breaking or entering (No. 94 CRS 6200): No prejudicial error.

Robbery with a firearm (No. 94 CRS 6201): No prejudicial error.

Felonious conspiracy (No. 94 CRS 6202): No prejudicial error.

Judges JOHNSON and WALKER concur.