TYSON, Judge.
 

 *380
 
 Devin Way Fink ("Defendant") appeals from judgment entered, following his conviction of larceny by employee. We find no error.
 

 I. Factual Background
 

 The State's evidence tended to show Defendant was employed as the store manager of an auto repair shop located on 4909 South Boulevard in Charlotte on 3 June 2014. This shop is part of a chain of repair shops owned by Precision Franchising, Incorporated, d/b/a Precision Tune Auto Care ("Precision"). Defendant managed all aspects of the shop, including discussing repairs with and pricing estimates for customers, writing service orders and invoices, ordering parts, and taking payments from customers.
 

 On 3 June 2014, Randall Stywall ("Stywall") took her car to the South Boulevard Precision shop, where Defendant was working as the sole manager on duty. Stywall explained to Defendant that, among other things, she needed replacement of both front struts and rear shocks. Defendant filled out a service order, which detailed the precise estimate for the work would be $1,501.93. Defendant provided Stywall with a copy.
 

 Because Stywall's mother, Pamela Nixon ("Nixon"), was paying for the repairs, Stywall contacted Nixon to confirm the estimated price.
 

 *381
 
 After Nixon agreed to the $1,501.93 estimate, Stywall left her car and a shop employee took her to work. Later that day, Defendant notified Nixon the repairs to her daughter's car were complete and her car was ready to be picked up. After Nixon finished work for the day, she went to the shop and paid $1,501.93, in cash, to Defendant, who provided her a receipt. Thereafter, Defendant closed the shop for the day and left.
 

 *539
 
 After paying for the repairs and receiving the keys to the car, Nixon went to pick up Stywall and brought her back to the shop to get her car. As soon as Stywall got into her car and started to drive it, she noticed the car was still making the earlier noise and was bouncing up and down as if the shocks were not replaced. Less than a minute after leaving Precision's parking lot, Stywall called Nixon and told her "the car's not fixed." Because Precision was already closed for the day, Nixon told her daughter to slowly drive the car home.
 

 That evening, Nixon called Defendant's cell phone number, which he had given to her earlier in the day, notified him the car was not fixed, and demanded the parts be removed and her money back. Defendant responded by stating he would not fulfill her requests, but he would try to get the car fixed the following day. Defendant requested Nixon not to call the shop.
 

 Not satisfied with Defendant's responses, Nixon called Precision's corporate office and complained. The next day, 4 June 2014, Precision District Operations Manager, Tony Lee Harp ("Harp"), contacted Nixon and discovered a discrepancy of approximately $425.00 between the amount stated on Nixon's service order and receipt. Harp then told her he was going to "make it right."
 

 Upon noticing this discrepancy, Harp called Defendant and questioned him. Defendant admitted he had the missing money. Harp requested Defendant to return to the shop immediately. Harp testified, that after the phone conversation with Defendant, he checked the records and saw the service order for $1,501.93 and the invoice for $1,076.56 for Stywall's car. The computer did not disclose how much the customer had tendered. Based off this invoice, Harp concluded the price discrepancy was the result of the deletion of the installation of the new rear shocks from the original service order.
 

 During his phone conversation with Harp, Defendant claimed he could not find the parts needed to complete the work, as the reason he still possessed the $425 in cash. Further, Defendant asserted Stywall was aware of this fact, and the two of them had agreed to Precision finishing the work once the necessary parts were obtained. Harp, however,
 
 *382
 
 testified he checked for the allegedly missing parts the next day, 4 June 2014, and found them "readily available." According to Harp, the company's policy for handling such a situation, where a customer paid an entire bill, prior to all the work being completed, was to create a deposit for the amount paid for uncompleted work.
 

 After speaking with Harp, Defendant returned to the shop and provided Precision with the missing $425.00. Precision completed the unfinished work to Stywall's car and provided Nixon with an additional future store credit for her troubles. Defendant was arrested at the shop.
 

 On 15 September 2014, Defendant was indicted with one count of larceny by employee. The indictment alleged Defendant went away with, embezzled, and converted to his own use United States currency, which had been delivered to be kept for his employer, Precision Auto Care, Inc. (PACI). The case proceeded to trial on 28 March 2016.
 

 At trial, Defendant objected to testimony by Charlotte Mecklenburg Police Officer Jarrett Phillips ("Phillips"), concerning a past encounter with Defendant. Phillips testified he had investigated Defendant for embezzlement in 2010. Defendant had worked as the manager of a restaurant and admitted stealing from the restaurant by voiding out cash transactions and keeping the cash for himself. Defendant signed a three-page statement written by Officer Phillips, wherein Defendant admitted he had been taking money from the restaurant. Defendant was later arrested for embezzlement.
 

 At the close of the State's evidence, Defendant moved to dismiss the charge on three separate grounds: (1) insufficient evidence to convict in violation of the Due Process Clause, U.S. Const. amends. V and XIV ; (2) a fatal variance between the crime alleged in the indictment and any crime for which the State's evidence may have been sufficient to go to the jury regarding the identity of the victim, namely a larceny against Nixon, not an "embezzlement" against "Precision Auto Care, Incorporated"; and (3) a fatal variance between the business as named in the indictment
 
 *540
 
 and as identified in testimony during trial. The motion was denied.
 

 During its deliberations, the jury posed the following question: (1) "If company name on charge is different than actual name, do we, the jury, need to consider? e.g., Precision Tune vs. Precision Auto vs. DBA." In response, the trial court re-read its jury instruction regarding the offense of larceny by employee. On 30 March 2016, the jury returned a verdict of guilty of one count of larceny by employee.
 

 Defendant gave notice of appeal in open court.
 

 *383
 

 II. Jurisdiction
 

 Jurisdiction of right lies in this Court by timely appeal from final judgment entered by the superior court, following a jury's verdict pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2015).
 

 III. Issues
 

 Defendant asserts the trial court erred by (1) denying his motion to dismiss the charge of larceny by employee for insufficiency of the evidence; (2) denying his motion to dismiss the charge of larceny by employee for a fatal variance of the evidence from the indictment; and (3) allowing the State to present improper evidence under Rule 404(b), where the prejudicial effect outweighed the probative value under Rule 403.
 

 IV. Motions to Dismiss
 

 Defendant argues the trial court erred by denying his motions to dismiss at the close of the State's evidence and again at the close of all the evidence where: (1) the State failed to present sufficient evidence to show Precision was the true owner of or entitled to the money Defendant took, and (2) there was a fatal variance between the entity named in the indictment and the proof at trial.
 

 A. Standard of Review
 

 This Court has stated:
 

 The standard for ruling on a motion to dismiss is whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense. Substantial evidence is relevant evidence which a reasonable mind might accept as adequate to support a conclusion. In ruling on a motion to dismiss, the trial court must consider all of the evidence in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence. Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal.
 

 State v. Wood
 
 ,
 
 174 N.C.App. 790
 
 , 795,
 
 622 S.E.2d 120
 
 , 123 (2005) (internal citations and quotations omitted).
 

 "This court reviews the trial court's denial of a motion to dismiss
 
 de novo
 
 ."
 
 State v. Smith
 
 ,
 
 186 N.C.App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007)
 

 *384
 
 (citation omitted). "[A] variance between the indictment and the proof at trial does not require reversal unless the defendant is prejudiced as a result."
 
 State v. Weaver
 
 ,
 
 123 N.C.App. 276
 
 , 291,
 
 473 S.E.2d 362
 
 , 371 (citation omitted),
 
 cert. denied and disc. review denied
 
 ,
 
 344 N.C. 636
 
 ,
 
 477 S.E.2d 53
 
 (1996).
 

 B. Insufficiency of the Evidence
 

 N.C. Gen. Stat. § 14-74
 
 provides:
 

 If any servant or other employee, to whom any money, goods or other chattels ... by his master shall be delivered safely to be kept to the use of his master, shall withdraw himself from his master and go away with such money, goods, or other chattels ... with intent to steal the same and defraud his master thereof, contrary to the trust and confidence in him reposed by his said master; or if any servant, being in the service of his master, without the assent of his master, shall embezzle such money, goods or other chattels ... or otherwise convert the same to his own use, with like purpose to steal them, or defraud his master thereof, the servant so offending shall be guilty of a felony: Provided, that nothing contained in this section shall extend to ... servants within the age of 16 years.
 

 N.C. Gen. Stat. § 14-74
 
 (2015).
 

 The elements of larceny by employee are: "(1) the defendant was an employee of the owner of the stolen goods; (2) the goods were entrusted to the defendant for the use of the employer; (3) the goods were taken
 
 *541
 
 without the permission of the employer; and (4) the defendant had the intent to steal the goods or to defraud his employer."
 
 State v. Frazier
 
 ,
 
 142 N.C.App. 207
 
 , 209,
 
 541 S.E.2d 800
 
 , 801 (2001) (citation omitted).
 

 In this case, the indictment alleged that Defendant had
 

 unlawfully, willfully and feloniously being the employee of Precision Auto Care, Inc. (PACI), a corporation, go away with, embezzle, and convert to his own use United States currency, which had been delivered to be kept for his employer's use, with the intent to steal and to defraud his employer. This act was done without his employer's consent and contrary to the trust and confidence reposed in him by his employer.
 

 Defendant contends he could not have committed larceny by employee under
 
 N.C. Gen. Stat. § 14-74
 
 because the cash given to
 
 *385
 
 Defendant remained the customer's property, and never became Precision's property. Defendant bases this contention on the following exchange between defense counsel and Harp:
 

 Q. After the repair is complete, the customer-and-and the work orders, the customer has given you the money, is that when you would say the money becomes Precision Tune's?
 

 A. Whenever the customer pays the bill. I mean, that's-I mean, that would be-
 

 Q. I mean, if the-if the customer pays the bill but the work isn't done is it still your money?
 

 A. If the customer pays the bill they would have to create a deposit. And if the work wasn't done, no, it would not be Precision Tune's money until-
 

 Q. Until the work was done?
 

 A. -until the customer decided that they were satisfied with the repair. But if they create a deposit, like I said before, it is discretionary on the manager's position whether or not the money's returned to the customer, depending on-if they're special order parts, it can't be returned, then I guess the deposit would be non-refundable.
 

 Defendant argues this exchange establishes the $425.00 remained Nixon's property, not Precision's, because the work had not been performed at the time she had made the payment. As a result, Defendant asserts the State failed to present sufficient evidence that "[D]efendant was an employee of the
 
 owner
 
 of the stolen goods."
 
 See
 
 id.
 

 (emphasis supplied). Defendant's contention is without merit.
 

 Evidence tended to show the cash was the property of Precision for purposes of larceny by employee under
 
 N.C. Gen. Stat. § 14-74
 
 . Harp testified Defendant returned the money to Precision, not Nixon. Nixon never received the $425.00 after delivering it to Defendant, who was the manager of the Precision shop. After Defendant returned the cash to Precision, the shop fixed Nixon's car and never offered her a refund. Instead, she was offered a voucher for future services worth $250.00 at Precision. Defendant does not show or argue he received the money from Nixon for any other reason or in any capacity other than as a manager of the Precision shop.
 

 *386
 
 Precision is bound under agency principles by Nixon's payment to Defendant, as its manager of Precision's shop.
 
 See
 

 Haynes Petroleum Corp. v. Turlington
 
 ,
 
 261 N.C. 475
 
 , 478,
 
 135 S.E.2d 43
 
 , 45-46 (1964) (citation omitted) ("No duty rests upon a debtor, who makes a payment to an agent designated to receive it, to see that the money reaches the principal, if the debtor is without notice of an improper purpose or intention on the part of the collecting agent.");
 
 see also
 

 Lucas v. Li'l General Stores
 
 ,
 
 289 N.C. 212
 
 , 220,
 
 221 S.E.2d 257
 
 , 262 (1976) (citation omitted) ("[A] principal, who has clothed his agent with apparent authority to contract in behalf of the principal, is bound by a contract made by such agent, within the scope of such apparent authority, with a third person who dealt with the agent in good faith, in the exercise of reasonable prudence and without notice of limitations placed by the principal upon the agent's authority.").
 

 As shop manager, Defendant's responsibilities included providing estimates and taking customer's payments. Defendant solely acted as Precision's agent when he provided the proposal and accepted the cash as full payment
 
 *542
 
 from Nixon for the agreed upon work. As soon as Nixon tendered payment to Defendant as Precision's manager and agent, the funds became Precision's "property" for purposes of larceny by employee under
 
 N.C. Gen. Stat. § 14-74
 
 .
 

 The State presented substantial evidence to allow a jury to determine whether the $425.00 belonged to Defendant's employer, Precision, or to Nixon.
 
 See
 

 State v. Mabry
 
 ,
 
 269 N.C. 293
 
 , 296,
 
 152 S.E.2d 112
 
 , 114-15 (1967) (citation omitted) (holding "[a]ny contradictions and discrepancies in the State's case are for the jury to resolve"). Viewed in the light most favorable to the State, and giving the State the benefit of every reasonable inference upon Defendant's motion to dismiss, sufficient evidence was presented to allow the jury to convict Defendant of the larceny by employee charge. The trial court properly denied Defendant's motion to dismiss for insufficient evidence. Defendant's argument is overruled.
 

 C. Variance between Indictment and Proof at Trial
 

 Defendant argues the trial court erred by denying his motion to dismiss the larceny by employee charge. He asserts a fatal variance exists between the indictment and the proof at trial. We disagree.
 

 "It is well established that '[a] defendant must be convicted, if at all, of the particular offense charged in the indictment' and that '[t]he State's proof must conform to the specific allegations contained' therein."
 
 State v. Henry
 
 ,
 
 237 N.C.App. 311
 
 , 322,
 
 765 S.E.2d 94
 
 , 102 (2014),
 
 disc. review denied
 
 ,
 
 368 N.C. 277
 
 ,
 
 775 S.E.2d 852
 
 (2015) (quoting
 
 *387
 

 State v. Pulliam
 
 ,
 
 78 N.C.App. 129
 
 , 132,
 
 336 S.E.2d 649
 
 , 651 (1985) ). However, "a variance between the indictment and the proof at trial does not require reversal unless the defendant is prejudiced as a result."
 
 Weaver
 
 ,
 
 123 N.C.App. at 291
 
 ,
 
 473 S.E.2d at 371
 
 (citation omitted).
 

 Defendant argues prejudice is shown, because the evidence presented by the State did not establish his employer was "Precision Auto Care, Inc. (PACI), a corporation," as alleged in the indictment. Evidence tended to show the actual name of the corporation is "Precision Franchising, Inc." which does business as "Precision Tune Auto Care." Defendant relies heavily on the holding in
 
 State v. Miller
 
 as authority to support their fatal variance argument.
 
 271 N.C. 646
 
 ,
 
 157 S.E.2d 335
 
 (1967).
 

 In
 
 Miller
 
 , the Defendant was charged with one count of feloniously breaking and entering a building "occupied by one Friedman's Jewelry, a corporation" and one count of felonious larceny from the same corporation named in count one.
 
 Id.
 
 at 653-54,
 
 157 S.E.2d at 342
 
 . At trial, the evidence showed that "the felonious breaking and entering was in a building occupied by 'Friedman's Lakewood, Incorporated'; that there [were] three Friedman's stores in Charlotte and that each is a separate corporation, but that all the merchandise that was stolen from the store that was broken into and entered was owned by 'Friedman's Jewelry, Incorporated,' with its home office located in Augusta, Georgia."
 

 Id.
 

 Our Supreme Court held the variance in the breaking and entering charge of the indictment was fatal because the building was owned by an entirely separate corporation, "Friedman's Lakewood, Incorporated," than the corporation named in the indictment, "Friedman's Jewelry, a corporation."
 

 Id.
 

 However, our Supreme Court held the variance between the indictment, which alleged that stolen rings were the property of "Friedman's Jewelry, a corporation," and the evidence, which showed the rings were the property of "Friedman's Jewelry, Incorporated," was not fatal as to the charge of felonious larceny.
 

 Id.
 

 Miller
 
 is readily distinguishable from the facts at bar. Where the variance in
 
 Miller
 
 involved two entirely separate corporate entities, the present case only involves
 
 one
 
 corporation.
 
 See
 
 id.
 

 Further,
 
 Miller
 
 's holding as to the second charge of felonious larceny supports the State's assertion that this variance is immaterial.
 

 Id.
 

 (holding the variance between the indictment, which alleged that stolen rings were the property of "Friedman's Jewelry, a corporation," and the evidence, which showed the rings were the property of "Friedman's Jewelry, Incorporated," was not fatal as to the charge of felonious larceny).
 

 *543
 

 *388
 
 Our courts have repeatedly held that minor variations between the name of the corporate entity alleged in the indictment and the evidence presented at trial are immaterial, so long as "[t]he defendant was adequately informed of the corporation which was the accuser and victim. A variance will not be deemed fatal where there is no controversy as to who in fact was the true owner of the property."
 
 State v. Ellis
 
 ,
 
 33 N.C.App. 667
 
 , 669,
 
 236 S.E.2d 299
 
 , 301 (1977) (citation omitted);
 
 see also
 

 State v. Wilson
 
 ,
 
 264 N.C. 595
 
 , 597-98,
 
 142 S.E.2d 180
 
 , 181-82 (1965) (finding no error when the indictment referred to the property owner as "B.M. Hancock & Son, a corporation" and evidence at trial referred to the corporation as "B.M. Hancock & Son's Feed Mill, Inc.," "B.M. Hancock & Son, Inc.," "B.M. Hancock & Son's," and "B.M. Hancock's Feed Mill");
 
 State v. Wyatt
 
 ,
 
 254 N.C. 220
 
 , 221-22,
 
 118 S.E.2d 420
 
 , 420-21 (1961) (finding no fatal variance where the indictment for embezzlement alleged ownership by the "Pestroy Exterminating Company," the bill of particulars alleged ownership in "Pestroy Exterminators, Inc.," and the evidence at trial referred to both of these names as well as "Pestroy Exterminating Corporation");
 
 State v. Davis
 
 ,
 
 253 N.C. 224
 
 , 226,
 
 116 S.E.2d 381
 
 , 383 (1960) ("The fact that the property was stolen from T.A. Turner & Co., Inc. rather than from T.A. Turner Co., a corporation, as charged in the bill of indictment, is not a fatal variance.");
 
 State v. Morris
 
 ,
 
 156 N.C.App. 335
 
 , 339,
 
 576 S.E.2d 391
 
 , 394 (2003) (finding no fatal variance where the indictment referred to the employer as "AAA Gas and Appliance Company, Inc." and the evidence at trial referred to the corporation as "AAA Gas and Appliance Company," "AAA Gas," or "AAA").
 

 Harp testified at trial he was the district operations manager for "Precision Tune Auto Care, North Carolina." When questioned by defense counsel, Harp noted the official name of the corporation was "Precision Franchising, Incorporated," doing business as "Precision Tune Auto Care." Harp and other witnesses subsequently referred to the company at various times as "Precision," "Precision Auto Care," "Precision Tune Auto Care," and "Precision Tune" throughout their testimony. The trial transcript demonstrates these names were simply shorthand methods for identifying the company during testimony.
 

 The evidence presented sufficiently identified Defendant as the employee of Precision Auto Care, as alleged in the indictment. On cross-examination of Harp, the following exchange occurred:
 

 [Defense Counsel]: Okay. So, to be clear, you work for Precision Franchising, Incorporated?
 

 [Harp]: That is correct.
 

 *389
 
 [Defense Counsel]: And not Precision Auto Care, Incorporated?
 

 [Harp]: One of the same.
 

 [Defense Counsel]: But there is only one, right? Which one-which one do you work for?
 

 [Harp]: They are one of the same. We do business as Precision Auto Care in a court of law.
 

 Additionally, Defendant has failed to demonstrate that he was prejudiced by use of the shorthand references to his employer during trial. The variation in names did not hamper Defendant's ability to defend against the charges or expose Defendant to potential future prosecution for the same crime. The trial court properly denied Defendant's motion to dismiss this charge. Defendant's contention is without merit. This assignment of error is overruled.
 

 V. Admission of Officer Phillips' Testimony under Rule 404(b)
 

 Defendant argues the trial court erred by allowing the jury to hear Officer Phillips' testimony regarding Defendant's prior embezzlement charge because: (1) the dissimilarity and remoteness between the two crimes makes its admission improper under Rule 404(b); (2) the testimony was not relevant to show the purposes to which the court limited its use: to show intent, plan, and absence of mistake or accident; and (3) the testimony was unduly prejudicial and inadmissible under Rule 403. We disagree.
 

 A. Standard of Review
 

 Our Supreme Court held:
 

 *544
 
 [W]hen analyzing rulings applying Rules 404(b) and 403, we conduct distinct inquiries with different standards of review. When the trial court has made findings of fact and conclusions of law to support its 404(b) ruling ... we look to whether the evidence supports the findings and whether the findings support the conclusions. We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion.
 

 State v. Beckelheimer
 
 ,
 
 366 N.C. 127
 
 , 130,
 
 726 S.E.2d 156
 
 , 159 (2012).
 

 "A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the
 
 *390
 
 result of a reasoned decision."
 
 State v. Hayes
 
 ,
 
 314 N.C. 460
 
 , 471,
 
 334 S.E.2d 741
 
 , 747 (1985) (citation omitted).
 

 B. Analysis
 

 1. 404(b) Evidence
 

 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2013). However, evidence of a defendant's prior crimes, statements, actions, and conduct is admissible, if relevant to any fact or issue other than the defendant's character.
 
 See
 

 Beckelheimer
 
 ,
 
 366 N.C. at 130-31
 
 ,
 
 726 S.E.2d at 159
 
 (citation omitted).
 

 North Carolina Rule of Evidence 404(b) is a rule of inclusion, not exclusion.
 
 Id.
 
 at 131,
 
 726 S.E.2d at
 
 159 (citing
 
 State v. Coffey
 
 ,
 
 326 N.C. 268
 
 , 278,
 
 389 S.E.2d 48
 
 , 54 (1990) ).
 

 The rule lists numerous purposes for which evidence of prior acts may be admitted, including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident. This list is not exclusive, and such evidence is admissible as long as it is relevant to any fact or issue [at trial]....
 

 Beckelheimer
 
 ,
 
 366 N.C. at 130
 
 ,
 
 726 S.E.2d at 159
 
 (internal citations and quotation marks omitted).
 

 Our Supreme Court has ruled Rule 404(b) is " 'subject to but
 
 one exception
 
 requiring the exclusion of evidence if its
 
 only
 
 probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.' "
 
 State v. Lyons
 
 ,
 
 340 N.C. 646
 
 , 668,
 
 459 S.E.2d 770
 
 , 782 (1995) (emphasis in original) (citation omitted).
 

 Rule 404(b) "evidence is relevant and admissible so long as the incidents are sufficiently similar and not too remote [in time]."
 
 State v. Blackwell
 
 ,
 
 133 N.C.App. 31
 
 , 35,
 
 514 S.E.2d 116
 
 , 119 (1999) (citing
 
 State v. Bagley
 
 ,
 
 321 N.C. 201
 
 , 207,
 
 362 S.E.2d 244
 
 , 247-48 (1987) );
 
 see also
 

 State v. Smith
 
 ,
 
 152 N.C.App. 514
 
 , 527,
 
 568 S.E.2d 289
 
 , 297 ("The use of evidence permitted under Rule 404(b) is guided by two constraints: similarity and temporal proximity.") (citation omitted),
 
 disc. review denied
 
 ,
 
 356 N.C. 623
 
 ,
 
 575 S.E.2d 757
 
 (2002).
 

 Officer Phillips' testimony, along with a written statement signed by Defendant, contained admissions that Defendant had embezzled cash receipts from his previous employer. Specifically, Officer Phillips stated
 
 *391
 
 he had interviewed Defendant in response to a fraud call at Encore Bistro Bar ("Encore") on 6 October 2010. Defendant had worked as Encore's manager and admitted stealing money from Encore by "voiding out" customer transactions and keeping the cash for himself.
 

 In a motion
 
 in limine
 
 , the State argued Officer Phillips' testimony regarding Defendant's prior conviction for embezzlement was admissible because it showed Defendant's prior knowledge, plan, or scheme and intent to permanently deprive Precision of its property. The trial court granted the State's motion
 
 in limine
 
 and allowed Officer Phillips to testify regarding Defendant's prior embezzlement charge.
 

 The State argued the specific facts and circumstances of Defendant's prior embezzlement charge described by Officer Phillips' testimony were relevant to show the Defendant's intent to permanently deprive Precision of its property, an essential element of larceny by employee.
 
 See
 

 *545
 

 Frazier
 
 ,
 
 142 N.C.App. at 209
 
 ,
 
 541 S.E.2d at 801
 
 (describing one of the elements of larceny by employee: "the defendant had the
 
 intent
 
 to steal the goods or to defraud his employer").
 

 Evidence tending to show Defendant embezzled from a previous employer four years prior to the incident at bar was clearly relevant to show his "intent," "plan," or "absence of mistake or accident." In both cases, Defendant: (1) worked for the victim business; (2) held a managerial position; (3) took cash paid to and intended for the victim business; (4) kept the cash for himself; and (5) manipulated the accounting procedures in an effort to cover his tracks. Officer Phillips' testimony was relevant under Rule 401, and served a proper purpose under Rule 404(b).
 

 In
 
 State v. Riddick
 
 , our Supreme Court stated: "Remoteness in time is less important when the other crime is admitted because its
 
 modus operandi
 
 is so strikingly similar to the
 
 modus operandi
 
 of the crime being tried as to permit a reasonable inference that the same person committed both crimes."
 
 316 N.C. 127
 
 , 134,
 
 340 S.E.2d 422
 
 , 427 (1986) ;
 
 see also
 

 State v. Gray
 
 ,
 
 210 N.C.App. 493
 
 , 507,
 
 709 S.E.2d 477
 
 , 488 (2011) ("[T]he more striking the similarities between the facts of the crime charged and the facts of the prior bad act, the longer evidence of the prior bad act remains relevant and potentially admissible for certain purposes."). The similarity of the two crimes and the methods Defendant used to conceal and steal cash receipts from his employers supports the trial judge's ruling.
 
 See
 
 Id.
 

 This evidence was properly admitted under the North Carolina Rules of Evidence, Rule 404(b).
 
 See
 

 Coffey
 
 ,
 
 326 N.C. at 278-79
 
 ,
 
 389 S.E.2d at 54
 
 (holding Rule 404(b) is a rule of inclusion). The trial court also gave
 
 *392
 
 the jury a limiting instruction regarding the purposes for which the jury could consider the evidence. The jury is presumed to have followed these instructions.
 
 State v. Montgomery
 
 ,
 
 291 N.C. 235
 
 , 244,
 
 229 S.E.2d 904
 
 , 909 (1976) (citation omitted) ("We assume, as our system for administration of justice requires, that the jurors in this case were possessed of sufficient character and intelligence to understand and comply with th[e limiting] instruction by the court.").
 

 The testimony of Officer Phillips and Defendant's signed statement was not admitted to show Defendant had a propensity to commit crimes. This evidence was admitted for the limited purposes to show Defendant's prior knowledge, plan, or scheme and intent to permanently deprive Precision of its property. The trial court did not err in concluding that Rule 404(b) permitted admission of these statements into evidence.
 

 2. Rule 403-Unfair Prejudice
 

 The trial court's admission of Officer Phillips' testimony did not violate Rule 403. "Evidence which is probative of the State's case necessarily will have a prejudicial effect upon the defendant; the question is one of degree."
 
 Coffey
 
 ,
 
 326 N.C. at 281
 
 ,
 
 389 S.E.2d at 56
 
 (citation omitted). The trial court determined the probative value of this evidence was not substantially outweighed by any prejudicial effect the admission of this evidence would have on Defendant based on the State's purposes of showing intent, plan, absence of mistake or accident.
 

 The trial court also gave a specific limiting instruction to the jury, both at the time of Officer Phillips' testimony and during the instruction to the jury. This limiting instruction stated:
 

 Evidence has been received tending to show that there was prior embezzlement from Encore Bistro & Bar.
 
 This evidence was received solely for the purpose of showing that the Defendant had the intent which is necessary-which is a necessary element of the crime charged in this case, that there existed in the mind of the Defendant a plan involving the crime charged in this case, the absence of mistake, the absence of accident.
 
 If you believe this evidence you many consider it but only for the limited purpose for which it is received. You may not consider it for any other purpose.
 

 (emphasis supplied).
 

 The trial court found the admission of Officer Phillips' testimony and the statement signed by Defendant was for a permissible purpose
 
 *393
 
 under Rule 404(b). The trial court also specifically limited its use in its instructions to the jury. Defendant has failed to
 
 *546
 
 show the trial court's process or admission of this evidence constitutes an abuse of discretion. Defendant's argument is overruled.
 

 VI. Conclusion
 

 The trial court did not err by denying Defendant's motions to dismiss the charge of larceny by employee, which asserted insufficiency of the evidence and a fatal variance between the evidence presented and the allegations in the indictment. The trial court properly allowed the State to present evidence under Rule 404(b). Defendant has failed to show an abuse of discretion in the trial court's ruling under Rule 403, that the prejudicial effect was not outweighed by the probative value. Defendant received a fair trial, free from prejudicial errors he preserved and argued.
 

 It is so ordered
 
 .
 

 NO ERROR.
 

 Judges CALABRIA and STROUD concur.