STATE OF NORTH CAROLINA v. TERRY LEE McNEIL, Defendant

No. COA02-175

(Filed 31 December 2002)

### 1. Evidence— DNA testing—motion to require—denied

Defendant's motion under Brady v. Maryland for DNA testing of hair samples from a cap dropped at the scene of a robbery and kidnapping was properly denied because defendant failed to show that the material he sought meets the requisite level of materiality.

### 2. Kidnapping— indictment—two purposes

A kidnapping indictment was proper where it alleged that defendant removed the victim for the purpose of terrorizing him and facilitating flight. This did not charge two crimes of kidnapping, but two purposes for which the kidnapping took place.

### 3. Kidnapping— elements—restraint not inherent in robbery

In a kidnapping and robbery prosecution, the State presented evidence of a restraint not inherent in the robbery where defendant moved the victim to the back of the store at gunpoint after completing the robbery.

Appeal by defendant from judgments entered 8 June 2001 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 16 October 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Douglas W. Corkhill, for the State.*

*John T. Hall, for defendant-appellant.*

STATE v. McNEIL

[155 N.C. App. 540 (2002)]

HUDSON, Judge.

Terry Lee McNeil ("defendant") was convicted of second-degree kidnapping and robbery with a dangerous weapon. He appeals the convictions, arguing that the trial court erred when it (1) denied his motion that a knit cap found at the scene be tested for hair and DNA; (2) denied his motion to dismiss the indictment because it improperly charged him with two separate kidnapping offenses; and (3) denied his motion to dismiss the kidnapping charge on the grounds that the State presented insufficient evidence of restraint separate from that inherent in the armed robbery. For the reasons set forth below, we see no error in defendant's convictions or sentence.

BACKGROUND

James Kelly worked part-time at Martin's Cleaners in Apex, North Carolina. On 9 November 2000, around 6 p.m., Kelly was watching television in the back of the store when he heard a sliding glass door squeak. He stood up and saw someone reach in through the door and grab a metal box that was located under the front counter. The intruder retreated through the same sliding door and got in a car. As the car began to pull away, Kelly heard one of the occupants exclaim to the other, "there is no money in the box." The car turned back to the front of the building, and one occupant, later identified as defendant, got out of the car, knocking his knit cap to the ground in the process.

Defendant, who now carried a gun, reentered the cleaners through the front door. Defendant pointed the gun at Kelly and told him to go to the rear of the building. Kelly did, and defendant told him to kneel. Defendant ordered the kneeling Kelly to hand over his wallet, which contained about sixty dollars. As Kelly complied, defendant ripped the phone out of the wall.

Defendant then told Kelly to stand up and, with the gun at Kelly's back, walked Kelly to the front of the cleaners. Defendant ordered Kelly to show him how to open the store's cash register and then to lie down on the floor. Touching the gun to the back of Kelly's head, defendant told Kelly to lie still. Defendant opened the cash register and took all of the money, approximately sixty dollars.

Defendant told Kelly to stand up and, again with the gun to his back, to walk to the rear of the cleaners. Defendant then left. Kelly stood where he was for two or three minutes until he heard the sound of tires on gravel. When Kelly looked out the window, he saw a car

pulling away and then went to the business next door and called the police. Officer Blomgren of the Apex police department responded and while at the scene collected the knit cap that had fallen in the parking lot.

Police arrested defendant on 2 January 2001 and charged him with kidnapping and robbery with a dangerous weapon. A jury found him guilty on both counts on 8 June 2001. The court sentenced defendant to 146 months to 185 months in prison for armed robbery and to a consecutive sentence of 59 to 80 months for second-degree kidnapping. Defendant now appeals.

## ANALYSIS

### I.

[1] Defendant argues first that the trial court erred when it denied his motion, pursuant to *Brady v. Maryland,* 373 U.S. 83, 10 L.Ed.2d 215 (1963), to have the knit cap tested for hair samples and that those samples be compared with defendant's hair and DNA. Defendant contends, "upon information and belief," that the two samples would not match, thereby exculpating him.

In *Brady,* the United States Supreme Court held that a defendant's due process rights are violated when the prosecution suppresses evidence that is "favorable to an accused" if the evidence is "material either to guilt or to punishment." *Brady,* 373 U.S. at 87, 10 L.Ed.2d at 218. To establish a *Brady* violation, a defendant must show (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial. *Id.* Evidence is considered material only if there is a "reasonable probability" of a different result had the evidence been disclosed to the defense. *United States v. Bagley,* 473 U.S. 667, 682, 87 L.Ed.2d 481, 494 (1985).

In our view, *Brady* does not apply, for several reasons. First, because the State never tested the hairs in the cap, there was no report to be disclosed to defendant. Moreover, another panel of this Court already has held that hair samples taken from the scene of a crime are not material for *Brady* purposes where, inter alia, the prosecution never conducted a DNA analysis. *State v. Campbell,* 133 N.C. App. 531, 515 S.E.2d 732, *disc. review denied,* 351 N.C. 111, 540 S.E.2d 370 (1999). As that court explained:

The district attorney did not have DNA analysis performed on the hair samples. Therefore, their inculpatory or exculpatory nature

is unknown. The existence of the hairs, alone, does not directly bear on the question of innocence for assuming *arguendo* that the hair samples came from an individual other than defendant, so this fact merely provides some support for the theoretical possibility that another individual was in the victim's room and was the perpetrator of the crime. While it is the better practice for the prosecution to disclose potentially exculpatory evidence, we find that the hair samples in this case do not rise to the level of materiality defined in *United States v. Bagley* . . . .

*Id.* at 541, 515 S.E.2d at 739. As the court in *Campbell* rejected the defendant's *Brady* argument, we conclude in this case that defendant has not shown that the material he sought rises to the requisite level of materiality.

Here, Kelly took only seconds to select defendant from a photo lineup presented one week after the incident. He was equally certain in his identification of defendant in court, and defendant has made no argument that either identification was unduly suggestive. Kelly described his opportunity to observe the robber and the vehicle used by the robber. In light of this evidence, we do not believe that DNA evidence, if any had been available, would have presented a reasonable probability of a different result. Thus, as in *Campbell*, we overrule defendant's assignment of error.

II.

[2] Defendant also argues that the indictment improperly charged him with two separate crimes of kidnapping, in violation of N.C. Gen. Stat. § 15A-924(a)(2). Accordingly, he contends that the trial court erred when it denied his motion to dismiss the indictment in its entirety.

The indictment charged defendant with "unlawfully confining, restraining, and removing [the victim] . . . from one place to another, without his consent and for the purpose of terrorizing him and facilitating flight following the commission of . . . Robbery with a Dangerous Weapon." Contrary to defendant's assertion, however, two different crimes are not alleged. Rather, the indictment sets forth two different *purposes* for which the kidnapping took place, a technique our Supreme Court explicitly approved in *State v. Moore*, 315 N.C. 738, 743, 340 S.E.2d 401, 404 (1986). The Court explained as follows in that case:

Since kidnapping is a specific intent crime, the State must prove that the defendant unlawfully confined, restrained, or removed the person for one of the eight purposes set out in the statute. The indictment in a kidnapping case must allege the purpose or purposes upon which the State intends to rely, and the State is restricted at trial to proving the purposes alleged in the indictment. Although the indictment may allege more than one purpose for the kidnapping, the State has to prove only one of the alleged purposes in order to sustain a conviction of kidnapping.

*Id.* (internal citations omitted). Relying on *Moore,* we conclude that the trial court did not err in refusing to dismiss the indictment.

III.

[3] Defendant also assigns error to the trial court's failure to dismiss the kidnapping charge. He argues that the State presented insufficient evidence of a restraint separate from that inherent in the robbery and that, as a result, he cannot constitutionally be convicted of both crimes.

The offense of kidnapping, defined by statute, provides in pertinent part:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

. . .

(2) facilitating the commission of any felony or facilitating flight of any person following the commission of a felony.

N.C. Gen. Stat. § 14-39. In *State v. Irwin,* 304 N.C. 93, 282 S.E.2d 439 (1981), our Supreme Court interpreted the statute to mean "that it was not the legislature's intent . . . to make a restraint which was an inherent, inevitable element of another felony, such as armed robbery or rape, a distinct offense of kidnapping thus permitting conviction and punishment for both crimes." *Id.* at 102, 282 S.E.2d at 446. Rather, "restraint" connotes a restraint separate and apart from that inherent in the commission of the other felony. *State v. Johnson,* 337 N.C. 212, 221, 446 S.E.2d 92, 98 (1994). The key question is whether the victim is exposed to greater danger than that inherent in the armed robbery itself or "subjected to the kind of danger and abuse the kidnapping

statute was designed to prevent." *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446.

Our appellate courts have, in the past, explored when the defendant's restraint of a victim constitutes an inherent part of an armed robbery and, therefore, cannot properly be the basis for a separate offense of kidnapping. One factor the courts have considered is whether the victim was forcibly moved for any reason other than commission of the armed robbery. In *Irwin*, relied upon in defendant's brief, the defendant was charged with kidnapping and an attempted armed robbery of a drug store. The State alleged that the defendant kidnapped the victim when, during the attempted robbery, his accomplice "forced [the victim] at knifepoint to walk from her position near the fountain cash register to the back of the store in the general area of the prescription counter and safe." *Id.* at 103, 282 S.E.2d at 446. In reversing the conviction for kidnapping, the Supreme Court held that the "victim's removal to the back of the store was an inherent and integral part of the attempted armed robbery. To accomplish defendant's objective of obtaining drugs, it was necessary that either [the store owner or the victim] go to the back of the store to the prescription counter and open the safe . . . . [The victim's] removal was a mere technical asportation and insufficient to support conviction for a separate kidnapping offense." *Id.* at 103, 282 S.E.2d at 446.

In a case similar to the one here, we upheld the denial of a motion to dismiss kidnapping charges where three people in a clothing store were forced at gunpoint to go from the front of the store to a dressing room in the rear some thirty to thirty-five feet away. *State v. Davidson*, 77 N.C. App. 540, 335 S.E.2d 518, *disc. review denied*, 314 N.C. 670, 337 S.E.2d 583 (1985). Because none of the stolen property was kept in the dressing room, we explained, it was not necessary to move the victims there in order to commit the robbery. *Id.* at 543, 335 S.E.2d at 520. We reasoned that removal of the victims to the dressing room was not an integral part of the robbery but instead constituted a "separate course of conduct designed to remove the victims from the view of passersby who might have hindered the commission of the crime." *Id.* But see *State v. Joyce*, 104 N.C. App. 558, 567, 410 S.E.2d 516, 521 (1991), *disc. review denied*, 331 N.C. 120, 414 S.E.2d 764 (1992) (trial court did not err in denying motion to dismiss kidnapping charges where the victims were moved from one room to another room where they were confined, an act independent of the robbery; the "rooms where the victims were ordered to go did

not contain safes, cash registers or lock boxes which held property to be taken."

In *State v. Weaver*, an accomplice pointed a gun at the victim and demanded that she hand over her car keys and money. 123 N.C. App. 276, 473 S.E.2d 362, *disc. review and cert. denied*, 344 N.C. 636, 477 S.E.2d 53 (1996). Because the victim had left those items in her hotel room, she had to enter the room to retrieve them in order for the planned robbery to be completed. *Id.* at 282, 473 S.E.2d at 366. After leading the victim into her hotel room at gunpoint, the defendants and their accomplices took the keys and money and quickly left. *Id.* The defendants were later convicted of kidnapping, convictions that this Court reversed on appeal. As we explained, there was "no indication in the record that [the victim] was forcibly moved to her room for any reason other than to complete the underlying robbery." *Id.* Moreover, "As in *Irwin*, it was necessary for the defendants to move the victim in order to effectuate their robbery, because the desired property was elsewhere. As in *Irwin*, the defendant moved the victim only as far as necessary to complete the robbery, and promptly released her." *Id.* at 282-83, 473 S.E.2d at 366.

Likewise in *State v. Ross*, 133 N.C. App. 310, 515 S.E.2d 252 (1999), this Court reversed a defendant's convictions for kidnapping in connection with an armed robbery. There, the defendant and others ordered the victims to first lie on the floor in their apartment and then to take the defendants into their bedrooms for their personal belongings. We held that the defendant's "actions, while reprehensible, were an 'inherent' part of the armed robbery." *Id.* at 315, 515 S.E.2d at 255.

Another factor that the courts have noted in the analysis of whether the restraint of a victim is an act independent of the armed robbery is whether that restraint exposed the victim to greater danger than that inherent in the underlying felony itself. In *State v. Muhammad*, 146 N.C. App. 292, 552 S.E.2d 236 (2001), for example, we found no error in the defendant's conviction for common-law robbery and second-degree kidnapping where the defendant approached the victim from behind, put an arm around the victim's throat, and hit the victim three times in the side. *Id.* at 293, 552 S.E.2d at 236. The defendant walked the victim to the front of the restaurant where the restaurant manager gave the defendant cash from the safe and register. The defendant then fled. *Id.* at 293-94, 552 S.E.2d at 237. We held that the defendant's actions "constituted restraint beyond what was necessary for the commission of common law robbery." *Id.* at 296,

552 S.E.2d at 238. The "defendant did substantially more than just force [the victim] to walk from one part of the restaurant to another;" he placed the victim in a choke hold, hit him in the side three times, wrestled with him on the floor, grabbed him around the throat, pointed a gun at his head, and marched him to the front of the store. *Id.* at 296, 552 S.E.2d at 238.; see also *State v. Beatty*, 347 N.C. 555, 559-60, 495 S.E.2d 367, 370 (1998) (holding that there was no kidnapping where the victim was forced to go inside the restaurant and held at gunpoint during the robbery but was not harmed or otherwise moved, but that there was a kidnapping where a second victim was forced to lie on the floor with his wrists and mouth bound with duct tape and then kicked twice in the back); *State v. Pigott*, 331 N.C. 199, 210, 415 S.E.2d 555, 561 (1992) (sustaining a kidnapping conviction where the defendant bound the victim's hands and feet); *State v. Fulcher*, 294 N.C. 503, 524, 243 S.E.2d 338, 352 (1978) (upholding a kidnapping conviction where the defendant bound both rape victims' hands).

The Court in *Muhammad*, when upholding the defendant's conviction for second-degree kidnapping, did imply that moving the victim at gunpoint, standing alone, would not necessarily constitute restraint beyond that what was necessary for the commission of the robbery. 146 N.C. App. at 295, 552 S.E.2d at 238 ("Defendant in the present case did not simply hold [the victim] at gun point and force him to walk to the cash register.").

Here, in order to effectuate the robbery, it was not necessary for defendant to move Kelly to the back of the cleaners at gunpoint. When defendant did so, the robbery had already been completed; defendant already had taken Kelly's wallet and had emptied out the cash register. Defendant did not move Kelly to the rear of the store to obtain more stolen items or otherwise to act in furtherance of the robbery. Defendant, moreover, did more than simply hold Kelly at gunpoint and force him to walk to the cash register. Defendant marched Kelly to the cash register with the gun at his back and then, after completing the robbery, marched Kelly to the rear of the store and left him there while he fled. This evidence sufficiently established additional restraint beyond that necessary for the robbery for the purpose of facilitating flight, as alleged in the kidnapping indictment.

Thus, we conclude that the trial court did not err in denying defendant's motion to dismiss the kidnapping charge and entering judgment thereon.

**SHOWCASE REALTY & CONSTR. CO. v. CITY OF FAYETTEVILLE BD. OF ADJUST.**

[155 N.C. App. 548 (2002)]

CONCLUSION

For the reasons set forth above, we overrule defendant's assignments of error.

No Error.

Judges McGEE and BIGGS concur.