STATE OF NORTH CAROLINA v. ANTONIO RAMILLE RYALS

No. COA05-1479

(Filed 17 October 2006)

### 1. Constitutional Law— due process—*Brady* decision—failure to conduct DNA test

The State's failure to conduct a DNA test on hair found on a knit cap discovered at a murder scene did not violate defendant's federal due process rights under *Brady v. Maryland,* 373 U.S. 83 (1963). The trial court gave defendant access to the State's physical evidence, including the knit cap, and defendant obtained a DNA analysis on a hair from the knit cap and presented the results at trial.

### 2. Criminal Law— discovery—performance of DNA test

The discovery statute that required the State to disclose, upon request by defendant, test results and the procedures utilized to reach those results, N.C.G.S. § 15A-903(e), did not compel the State to perform a DNA test on hair found on a knit cap discovered at a murder scene.

### 3. Search and Seizure— nontestimonial identification order—motion by defendant—DNA test of another

The trial court had no authority to grant defendant's motion for a nontestimonial identification order requiring the State to test the DNA of another individual in order to show that a murder was committed by that individual rather than by defendant. N.C.G.S. § 15A-281.

### 4. Evidence— guilt of another defense—relevancy—failure to make offer of proof

The trial court did not err in a second-degree murder case by prohibiting defendant from cross-examining a witness as to whether he would submit a DNA sample for comparison with a knit cap found at the crime scene, because: (1) N.C.G.S. § 8C-1, Rule 401 provides that evidence of the guilt of another must point directly to the guilt of another specific party and must tend both to implicate that other party and be inconsistent with the guilt of defendant; (2) evidence which does no more than create an inference or conjecture as to another's guilt is inadmissible; (3) defendant made no offer of proof as to what the witness's answer to

this question would have been; (4) even assuming arguendo that the witness would have answered this question in the negative, such an answer would not point directly to his guilt, nor would it be inconsistent with defendant's guilt when conflicting evidence was presented at trial as to whether the perpetrator of the assault was wearing a hat; and (5) defendant failed to raise at trial the constitutional issue of the right to present a complete defense, and it will not be addressed for the first time on appeal.

**5. Evidence— hearsay—residual hearsay exception—lack of trustworthiness**

The trial court did not err in a second-degree murder case by preventing defendant's investigator from testifying to a witness's statement under the residual hearsay exception of N.C.G.S. § 8C-1, Rule 804(b)(5), because: (1) the trial court's finding that the statement lacked circumstantial guarantees of trustworthiness was supported by competent evidence including the large amount of alcohol consumed at the witness's house as well as defendant's choice not to call the other people present at the witness's house to testify; and (2) the statement was not more probative than any other evidence that defendant could secure through reasonable efforts on the point of defendant's alibi.

Appeal by Defendant from an order dated 2 November 2004 by Judge Kenneth C. Titus in Superior Court, Durham County and judgment dated 4 March 2005 by Judge Robert H. Hobgood in Superior Court, Durham County. Heard in the Court of Appeals 16 August 2006.

*Attorney General Roy Cooper, by Special Deputy Attorney General Robert J. Blum, for the State.*

*Kathryn L. VandenBerg for Defendant-Appellant.*

McGEE, Judge.

Antonio Ramille Ryals (Defendant) was convicted of second-degree murder of Larry Holland (Holland). The trial court sentenced Defendant to a term of 250 months to 309 months in prison. Defendant appeals.

Prior to trial, Defendant moved for a nontestimonial identification order. Defendant sought to collect a DNA sample from Anthony Winstead (Winstead). Defendant claimed Winstead had motive to

commit the assault, admitted being present at the scene, and "could have committed the crime." Defendant wanted to compare a DNA sample from Winstead to a DNA sample from a knit cap recovered from the scene. The trial court denied Defendant's motion.

At trial, the State's evidence tended to show the following. Kaye Lee (Lee) testified she was with Defendant, Winstead, and two other individuals outside the Liberty Square Apartments located on Liberty Street in Durham on 14 February 2003. Lee testified that Defendant was agitated and had been kicking the dumpsters outside the apartment building. She stated that Holland walked by the group and that Winstead accused Holland of owing him twenty dollars. Winstead then told Defendant to "[t]ake care of that —— I got ya." Lee testified that Defendant beat Holland repeatedly with his fists, kicked him and stomped on him. Lee testified that she walked to a nearby store and that when she returned, Defendant was still beating Holland.

Winstead testified that he and Defendant were sitting in front of the Liberty Square Apartments on 14 February 2003 when Holland approached them and asked if they had any "stuff, meaning drugs." Winstead testified he told Holland they did not have any drugs, and told Holland to leave. Winstead stated that Holland then stepped toward Defendant and got "all in [Defendant's] face." Winstead testified that Defendant then hit Holland, and when Winstead tried to break up the altercation, Defendant swung at Winstead. Winstead said he saw Defendant hit Holland and kick Holland once. Winstead also testified that Holland always wore a blue knit cap and that Holland was wearing one on 14 February 2003.

Winstead was asked during cross-examination if he would provide a DNA sample. The State objected and moved to strike. The trial court heard arguments outside the presence of the jury, sustained the objection, and allowed the State's motion to strike.

Mark Bradford, a crime scene technician with the Durham Police Department, testified that among the items recovered from the scene was a black knit cap, a blood-stained shirt, two teeth and a set of keys.

Officer John Suitt, Jr., an investigator with the Durham Police Department, testified that he responded to a call to the Liberty Square Apartments on 14 February 2003. Officer Suitt indicated during cross-examination that when he spoke to Lee on 28 February 2003, she stated that Defendant had not been wearing a cap at the time of the assault. Officer Suitt also testified that Lee indicated that Winstead

usually wore a cap. Officer Suitt also read into evidence a statement by Defendant in which Defendant denied being at the Liberty Square Apartments during the assault. Defendant stated he was with Tamikia Carter (Carter) at her home. Defendant also stated that Carter's children and sister, along with Defendant's brother and cousin, were also present in the Carter home the night of the assault. In his statement, Defendant said the group passed out at Carter's home between midnight and 1:00 a.m. the night of the assault, and did not get up until noon the following day.

Vincente Lopez Reyes (Reyes) testified through an interpreter. Reyes stated that at approximately 10:00 p.m. on 14 February 2003, he heard two men arguing outside of his apartment on Liberty Street. Reyes testified that he looked out his door and saw a man leaning against the back side of Reyes' car and that "it seemed like [the man] was kicking somebody down there." Reyes shined a flashlight at the man, but testified that the man never showed his face to Reyes. Reyes testified that the man was dressed in loose, black clothing, and was wearing a blue or black woven hat.

Officer Wallace Early of the Durham Police Department testified that testing done on the knit cap recovered at the scene revealed the presence of Negroid hair which was not suitable for further analysis. On cross-examination, Officer Early testified that the decision not to seek further testing on the hair sample was made partly because "this was something that could help the Defense, and if they wanted to have the hat tested, they would do it." Officer Early also acknowledged that Defendant consented to providing a DNA sample. Officer Early did not request a DNA sample from Winstead.

Defendant offered the testimony of Megan Clement (Clement), Technical Director of the Forensic Identity Department of LabCorp. Clement stated that upon Defendant's request she tested a hair from the knit cap against a sample obtained from Defendant. As a result of the analysis, she concluded that the hair sample from the knit cap "could not have originated" from Defendant.

Before Defendant rested, the trial court heard arguments outside the presence of the jury on Defendant's motion to allow hearsay evidence. Defendant sought to allow his investigator, Steve Hale, to testify regarding the contents of a statement given to him by Carter on 3 August 2004. Steve Hale would have testified that Carter told him that she held a party at her home on 14 February 2003. According to Carter's statement, she picked up Defendant between 7:00 and 8:00

p.m. and brought him to her home. Defendant remained at Carter's home all night. Further, Carter stated that she remembered the day because it was Valentine's Day and she intended to celebrate by drinking with Defendant. The parties stipulated to the unavailability of Carter. The trial court denied Defendant's motion on the grounds that the statement lacked substantial guarantees of trustworthiness and was not more probative than any other evidence Defendant could secure with reasonable efforts.

I.

Defendant first asserts a constitutional and statutory right to compare Winstead's DNA to the hair recovered from the knit cap in support of Defendant's "guilt of another" defense. We overrule this assignment of error.

[1] Defendant argues that by suppressing his access to Winstead's DNA, the State violated his federal due process rights under *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963). In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 10 L. Ed. 2d at 218. To show a *Brady* violation, a defendant must establish "(1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial." *State v. McNeil*, 155 N.C. App. 540, 542, 574 S.E.2d 145, 147 (2002), *disc. review denied*, 356 N.C. 688, 578 S.E.2d 323 (2003). To meet the materiality requirement, Defendant must establish that "there [was] a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494 (1985).

In *McNeil*, 155 N.C. App. at 542, 574 S.E.2d at 146-47, the defendant argued that the trial court improperly denied his motion to have a knit cap tested for DNA and compared with the defendant's DNA pursuant to *Brady*. This Court rejected the challenge stating:

In our view, *Brady* does not apply, for several reasons. First, because the State never tested the hairs in the cap, there was no report to be disclosed to defendant. Moreover, another panel of this Court already has held that hair samples taken from the

scene of a crime are not material for *Brady* purposes where, inter alia, the prosecution never conducted a DNA analysis. *State v. Campbell*, 133 N.C. App. 531, 515 S.E.2d 732, *disc. review denied*, 351 N.C. 111, 540 S.E.2d 370 (1999).

*McNeil*, 155 N.C. App. at 542, 574 S.E.2d at 147.

Here, the trial court gave Defendant access to the State's physical evidence, including the knit cap, by order dated 18 July 2004. Defendant obtained DNA analysis on a hair from the knit cap from LabCorp and presented the results at trial. Clement testified that after conducting DNA testing, she concluded that the sample taken from the knit cap did not match Defendant's DNA sample. Neither *McNeil* nor *Campbell*, relied on by Defendant, stand for the proposition that the State violates a defendant's due process rights under *Brady* by failing to conduct a DNA test. *See id*. We overrule this assignment of error.

[2] Defendant also contends that N.C. Gen. Stat. § 15A-903(e) "required the prosecutor to obtain a DNA sample from Anthony Winstead for comparison to hairs in the knit cap." Defendant argues that the trial court's refusal to require the State to perform DNA testing entitles him to a new trial. We disagree.

Prior to a recent amendment, N.C. Gen. Stat. § 15A-903(e) (2003) stated:

Reports of Examinations and Tests—Upon motion of a defendant, the court must order the prosecutor to provide a copy of or to permit the defendant to inspect and copy or photograph results or reports of physical or mental examinations or of tests, measurements or experiments made in connection with the case, or copies thereof, within the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecutor. In addition, upon motion of a defendant, the court must order the prosecutor to permit the defendant to inspect, examine, and test, subject to appropriate safeguards, any physical evidence, or a sample of it, available to the prosecutor if the State intends to offer the evidence, or tests or experiments made in connection with the evidence, as an exhibit or evidence in the case.

This section has been broadly construed by our courts and requires the State to disclose, upon request by a defendant, not only the bare results of tests, but also tests or procedures utilized to reach the con-

clusions. *State v. Dunn*, 154 N.C. App. 1, 8, 571 S.E.2d 650, 655 (2002), *disc. review denied*, 356 N.C. 685, 578 S.E.2d 314 (2003).

While Defendant accurately notes the broad construction afforded this statutory provision, Defendant fails to show how the statute compels the State to *perform* a DNA test. In this instance, no DNA test was performed on Winstead's hair, and for reasons discussed in the next section, Defendant was not entitled to an order requiring it. Accordingly, the discovery rule provides no basis for a finding of prejudicial error.

[3] In Defendant's final argument within this assignment of error, he asserts that "the trial court erred in failing to order the State to obtain a sample of Winstead's DNA upon the defense request for a nontestimonial identification order." The trial court denied Defendant's motion on the ground that Defendant's affidavit "raise[d] a mere suspicion, and that's not enough . . . to find that there's probable cause to require the [nontestimonial identification] order testing the DNA." We hold that the trial court properly denied Defendant's motion, but not for the reason given. Instead, the trial court lacked the statutory authority to grant the motion. *See State v. Tucker*, 329 N.C. 709, 721, 407 S.E.2d 805, 812 (1991).

N.C. Gen. Stat. § 15A-281 governs requests by defendants for nontestimonial identification orders and provides:

> A person arrested for or charged with a felony offense, or a Class A1 or Class 1 misdemeanor offense may request that nontestimonial identification procedures be conducted *upon himself*. If it appears that the results of specific nontestimonial identification procedures will be of material aid in determining whether the defendant committed the offense, the judge to whom the request was directed must order the State to conduct the identification procedures.

N.C. Gen. Stat. § 15A-281 (2005) (emphasis added). In *Tucker*, 329 N.C. at 720, 407 S.E.2d at 812, the defendant sought a nontestimonial identification order to test the DNA of a witness to show that the defendant was innocent. The trial court denied the defendant's motion. *Id.* Our Supreme Court affirmed the trial court's decision, because "no statute gives a defendant the right to request [a nontestimonial identification] order directed against potential witnesses against him or against any other individual." *Id.* at 721, 407 S.E.2d at 812.

Here, like in *Tucker*, Defendant sought a nontestimonial identification order directed against another individual. Since our Supreme Court has previously held that the trial court lacked the authority to grant such an order, Defendant's motion was properly denied. Accordingly, this assignment of error is overruled.

II.

[4] Defendant next argues that the trial court erred by prohibiting him from cross-examining Winstead as to "why [Winstead] refused to voluntarily submit a DNA sample for comparison with the knit cap found at the scene." Defendant contends this evidence was relevant under N.C. Gen. Stat. § 8C-1, Rule 401 to show guilt of another and that limiting cross-examination in this way violated Defendant's constitutional right to present a complete defense. We find this assignment of error without merit.

Defendant argues that evidence regarding Winstead's lack of cooperation was relevant under N.C. Gen. Stat. § 8C-1, Rule 401 and went beyond mere speculation and conjecture as to the guilt of another. Thus, according to Defendant, the trial court erred in excluding the evidence sought to be elicited on cross-examination concerning whether Winstead would submit to a DNA test.

Our Supreme Court has held that in order to meet the relevancy requirement of N.C. Gen. Stat. § 8C-1, Rule 401, evidence of the guilt of another "must point directly to the guilt of another specific party and must tend both to implicate that other party and be inconsistent with the guilt of the defendant." *State v. Brewer*, 325 N.C. 550, 561, 386 S.E.2d 569, 575 (1989), *cert. denied, Brewer v. North Carolina*, 495 U.S. 951, 109 L. Ed. 2d 541 (1990). Thus, "[e]vidence which does no more than create an inference or conjecture as to another's guilt is inadmissible." *Id.* at 564, 386 S.E.2d at 577. On appeal, the trial court's determination of relevancy is given great deference. *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991), *cert. denied, Wallace v. North Carolina*, 506 U.S. 915, 121 L. Ed. 2d 241 (1992).

Here, the issue is whether Defendant should have been permitted to ask Winstead on cross-examination if Winstead was willing to submit a DNA sample, and not as Defendant contends, whether the results of a test of Winstead's DNA would have properly been admissible. First, we note that Defendant made no offer of proof as to what Winstead's answer to this question would have been. "In order to pre-

serve an argument on appeal which relates to the exclusion of evidence, including evidence solicited on cross-examination, the defendant must make an offer of proof so that the substance and significance of the excluded evidence is in the record." *State v. Ginyard*, 122 N.C. App. 25, 33, 468 S.E.2d 525, 531 (1996). *See also* N.C. Gen. Stat. § 8C-1, Rule 103(a)(2) (2005). Accordingly, " '[w]e can only speculate as to what the witness' answer would have been.' " *State v. Barton*, 335 N.C. 741, 749, 441 S.E.2d 306, 310-11 (1994) (quoting *State v. King*, 326 N.C. 662, 674, 392 S.E.2d 609, 617 (1990)).

Even assuming that Winstead would have answered this question in the negative, such an answer would not point directly to his guilt, nor would it be inconsistent with Defendant's guilt. Conflicting testimony was presented at trial as to whether the perpetrator of the assault was wearing a hat. Thus, whether or not Winstead would submit to a DNA test does no more than raise conjecture that he was wearing the hat, a fact which is not inconsistent with Defendant's guilt and does not directly point to Winstead's guilt. Accordingly, we affirm the trial court's relevancy determination.

By this assignment of error, Defendant also argues that limiting Defendant's cross-examination of Winstead violated Defendant's right to present a complete defense under the U.S. Constitution. Defendant relies upon *Chambers v. Mississippi*, 410 U.S. 284, 35 L. Ed. 2d 297 (1973), to support this argument. At trial, no argument was made with respect to whether precluding Defendant's question amounted to a constitutional violation. Because Defendant failed to raise this constitutional issue below, we decline to address it now. *See State v. Chapman*, 359 N.C. 328, 366, 611 S.E.2d 794, 822 (2005) ("[C]onstitutional error will not be considered for the first time on appeal.").

III.

[5] In his third assignment of error, Defendant contends that the trial court erred in preventing Defendant's investigator, Steve Hale, from testifying to a statement given by Carter pursuant to the residual hearsay exception of N.C. Gen. Stat. § 8C-1, Rule 804(b)(5). Defendant further asserts that exclusion of this statement amounted to a constitutional violation of his right to present a defense. We decline to address Defendant's constitutional argument because he did not raise it below. *See Chapman*, 359 N.C. at 366, 611 S.E.2d at 822 ("[C]onstitutional error will not be considered for the first time on appeal.").

Unavailability of a declarant is required to admit hearsay evidence pursuant to N.C. Gen. Stat. § 8C-1, Rule 804(b)(5). *State v. Triplett*, 316 N.C. 1, 9, 340 S.E.2d 736, 741 (1986). Upon a finding of unavailability, the trial court must engage in a six-part inquiry to determine whether the hearsay testimony is admissible. *Id.* at 8, 340 S.E.2d at 741. The trial court must determine that proper notice was given by the proponent, and that the evidence does not fall within any other hearsay exception. *Id.* at 9, 340 S.E.2d at 741. The trial court must find that the statement exhibits "equivalent circumstantial guarantee[s] of trustworthiness" and "is offered as evidence of a material fact." *Id.* The statement must also be "more probative on the point for which it is offered than any other evidence which the proponent can produce through reasonable efforts." *Id.* (quoting N.C. Gen. Stat. § 8C-1, Rule 804(b)(5) (2005)). Finally, the trial court must find that "the general purposes of [the] rules [of evidence] and the interests of justice will best be served by admission of the statement into evidence." *Id.* Further, our Supreme Court has held that, on appeal, "[w]e will find reversible error only if the findings are not supported by competent evidence, or if the law was erroneously applied." *State v. Deanes*, 323 N.C. 508, 515, 374 S.E.2d 249, 255 (1988), *cert. denied, Deanes v. North Carolina*, 490 U.S. 1101, 104 L. Ed. 2d 1009 (1989).

Defendant argues that the trial court erred in concluding that Carter's statement lacked the trustworthiness required to admit it under N.C.G.S. § 8C-1, Rule 804(b)(5). Our Supreme Court has identified four factors a trial court should consider in its trustworthiness analysis: "(1) assurances of the declarant's personal knowledge of the underlying events, (2) the declarant's motivation to speak the truth or otherwise, (3) whether the declarant has ever recanted the statement, and (4) the practical availability of the declarant at trial for meaningful cross-examination." *Triplett*, 316 N.C. at 10-11, 340 S.E.2d at 742.

In ruling upon the admissibility of Carter's statement, the trial court found that the large amount of alcohol consumed at Carter's house, and Defendant's choice not to call the other people present at Carter's house to testify, diminished the circumstantial guarantees of trustworthiness of Carter's statement. Defendant indicated that the choice was made not to offer these other witnesses because they could not testify for certain that they were at Carter's house "at any particular time" and could not testify that Defendant was at Carter's house for the entire evening. The trial court's finding that

BOBBITT v. N.C. STATE UNIV.

[179 N.C. App. 743 (2006)]

the statement lacked circumstantial guarantees of trustworthiness is supported by competent evidence, and we must therefore affirm the finding.

The trial court also found that the statement was inadmissible under the residual hearsay exception because it was not more probative than any other evidence that Defendant could secure through reasonable efforts on the point of Defendant's alibi. Specifically, the trial court noted that Carter's sister and another available witness had also attended the party and could serve as alibi witnesses for Defendant, instead of Steve Hale's hearsay testimony. Because this finding is supported by competent evidence, we affirm. Thus, the trial court properly excluded the hearsay testimony under N.C.G.S. § 8C-1, Rule 804(b)(5).

Defendant does not argue his remaining assignments of error. Accordingly, we deem them abandoned pursuant to N.C.R. App. P. 28(b)(6).

No error.

Judges BRYANT and ELMORE concur.