An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA12-1366
NORTH CAROLINA COURT OF APPEALS

Filed: 18 February 2014

ANNE BLANCHARD, EXECUTRIX OF THE
ESTATE OF MARY LOU BARTHAZON,
        Plaintiff,

    v.                                Orange County
                                      No. 09 CVS 1109
BRITTHAVEN, INC. and HILLCO,
LTD.,
        Defendants.


    Appeal by plaintiff from judgment and order entered 12 October 2011 and 13 January 2012 by Judge Shannon R. Joseph in Orange County Superior Court.  Heard in the Court of Appeals 23 May 2013.


        *Henson & Fuerst, P.A., by Anne Duvoisin; Connor & Connor, LLC, by Kenneth L. Connor; and Brian G. Brooks, Attorney at Law, PLLC, by Brian G. Brooks, for plaintiff-appellant.*

        *Hurley Law Office, by Michael C. Hurley and Katherine L. Jones, for defendants-appellees.*


    GEER, Judge.


    Plaintiff Anne Blanchard, executrix of the Estate of Mary Lou Barthazon, appeals from the trial court's entry of a final judgment following a jury verdict in favor of defendants

Britthaven, Inc. and Hillco, Ltd. Plaintiff had asserted claims for ordinary and medical negligence arising out Britthaven's allegedly improper care of Ms. Barthazon while she was a resident at Britthaven's Chapel Hill, North Carolina nursing home, which, plaintiff contended, resulted in Ms. Barthazon's death.

On appeal, plaintiff primarily argues that the trial court erred in excluding evidence of (1) documents produced by the North Carolina Department of Health and Human Services ("NC DHHS") following inspections of Britthaven's Chapel Hill, North Carolina nursing home and (2) decisions resulting from administrative appeals related to Ms. Barthazon's death. Plaintiff's arguments on appeal regarding the admissibility of the exhibits all hinge on plaintiff's assertion that the documents were relevant to prove causation. However, plaintiff did not, at trial, seek admission of the exhibits on that basis. Plaintiff's appellate arguments were not, therefore, properly preserved at trial for appeal.

## Facts

On 21 June 2004, Ms. Barthazon was admitted as a resident to a nursing home in Chapel Hill operated by Britthaven, a wholly owned subsidiary of Hillco. At that time, Ms. Barthazon was 95 years old, was non-ambulatory, and had severe Alzheimer's

dementia and osteoporosis, making her at risk for broken bones from falls. Pursuant to her resident care plan, Ms. Barthazon was only to be transferred from a chair to her bed by use of a certain mechanical lift. On 30 September 2007, Mack Weldon Jones, Jr., who was working for Britthaven as a certified nursing assistant, manually transferred Ms. Barthazon from a chair to her bed without the use of a mechanical lift, in violation of Ms. Barthazon's care plan.

Due to swelling and bruising in Ms. Barthazon's knees, Britthaven staff ordered an x-ray of Ms. Barthazon's knees on 13 October 2007. The 13 October 2007 x-rays revealed that Ms. Barthazon had two broken femurs. Because of her condition, Ms. Barthazon was admitted to the University of North Carolina Hospital's Emergency Department on 14 October 2007. Ms. Barthazon died on 18 October 2007.

On 13 July 2009, plaintiff, Ms. Barthazon's daughter, filed suit against defendants, asserting claims for (1) "ORDINARY CORPORATE NEGLIGENCE" causing Ms. Barthazon's broken femurs but not causing her death; (2) medical negligence causing various lifetime injuries and Ms. Barthazon's death; and (3) "ORDINARY NEGLIGENCE (NON-ADMINISTRATIVE BASIC CARE)" causing various lifetime injuries and Ms. Barthazon's death. The complaint also sought to pierce the corporate veil and obtain relief against

Britthaven's parent company, Hillco, on the basis that Hillco also owed duties of care to Ms. Barthazon and its breach of those duties caused Ms. Barthazon's injury.

On 17 June 2011, defendants filed a motion for partial summary judgment on plaintiff's claims for corporate negligence, ordinary negligence, piercing the corporate veil, and punitive damages. On or about 2 August 2011, defendants filed a "MOTION FOR FINAL SUMMARY JUDGMENT" as to all of plaintiff's claims.

The trial court granted in part and denied in part defendants' motion for summary judgment as to corporate negligence and granted defendants' motion for summary judgment as to all of plaintiff's ordinary negligence claims other than the corporate negligence claim.[1] On or about 1 September 2011, the trial court entered an order deferring a ruling on defendants' motion for partial summary judgment as to

---

[1]On 29 August 2011, the court entered an order on defendants' motion for partial summary judgment on the ordinary negligence claims which provided that "Defendants' Motion for Partial Summary Judgment is granted as to all of Plaintiff's claims for ordinary negligence that were not adjudicated as part of this Court's Order of August 5, 2011." The 5 August 2011 partial summary judgment order does not appear to be included in the record on appeal. However, a 14 August 2011 email from the trial court to counsel regarding defendants' summary judgment motions indicates that, on 5 August 2011, the court entered an order granting in part and denying in part defendants' partial summary judgment motion as to the corporate negligence claim. That email also indicated that the court took defendants' summary judgment motion as to plaintiff's claim for punitive damages under advisement at that time. The trial court restated the content of the email during a pretrial hearing.

plaintiff's claim based on piercing the corporate veil and denying defendant's motion for final summary judgment.

Although the record is not entirely clear, it appears that the case proceeded to trial on plaintiff's claims for medical negligence, corporate negligence, and liability against Hillco based on piercing the corporate veil. During the charge conference, following the presentation of all the parties' evidence, the trial court, on its own initiative, suggested that the verdict sheet set out an initial question of whether "any conduct" of defendants proximately caused Ms. Barthazon's injuries before asking the jury to decide whether defendants breached any duty of care towards Ms. Barthazon.

In accordance with the court's suggestion, the first question on the verdict sheet asked: "Was any conduct of defendant Britthaven, Inc. a proximate cause of any injury to, or the death of, Mary Lou Barthazon?" Following deliberation, the jury answered that first question in the negative. The trial court, therefore, entered final judgment in favor of defendants on 12 October 2011.

On 19 October 2011, plaintiff filed a motion for a new trial pursuant to Rule 59(a) of the Rules of Civil Procedure. The trial court denied plaintiff's motion for a new trial in an

order entered 13 January 2012. Plaintiff timely appealed to this Court.

I

Plaintiff first argues that the trial court erred by excluding (1) evidence of inspections (called "surveys") conducted at Britthaven's Chapel Hill nursing home pursuant to state and federal regulations and (2) evidence arising out of Britthaven's administrative appeals from those surveys. Plaintiff contends that this evidence was relevant to the issue of causation and admissible under Rule 803(8)(c) of the Rules of Evidence.

Britthaven is a long-term care facility that participates in the federal Medicare program. Pursuant to state and federal regulations, NC DHHS inspects, or "surveys," long-term care facilities to ensure compliance with Medicare regulations. *See* N.C. Admin. Code, tit. 10A, r. 13D.2109(a) (October 2013); 42 C.F.R. § 488.330(a)(1)(i) (2013); 42 C.F.R. § 488.330(b)(1).

If NC DHHS finds noncompliance with federal regulations after a survey, NC DHHS produces a statement of deficiencies ("SOD") that outlines the specific instances of noncompliance and the evidence on which the findings are made. NC DHHS also certifies its findings to the federal Centers for Medicare & Medicaid Services ("CMS"). 42 C.F.R. § 488.330(a)(1)(i)(C).

The findings of NC DHHS surveyors are recommendations to CMS, which then makes its own determination regarding the long-term care facility's compliance with federal regulations. 42 C.F.R. § 488.12 (2013).

In this case, NC DHHS conducted surveys at Britthaven's Chapel Hill nursing home on 19 October 2007 and 29 November 2007. NC DHHS reported its results from the October and November 2007 surveys on "FORM CMS-2567" documents. Both forms contained a summary SOD with supporting findings, and the November 2007 form further contained a plan of correction for the deficiencies found. In each form's SOD, NC DHHS reported noncompliance with federal Medicare regulations.

CMS adopted NC DHHS' recommendations based on the November 2007 survey and resulting SOD, which CMS determined superseded the SOD for the October 2007 survey. Findings of noncompliance in both surveys were based upon Mr. Jones' manual transfer of Ms. Barthazon from a chair to her bed in violation of Ms. Barthazon's care plan.

Following completion of a survey and SOD, a facility subject to CMS-imposed sanctions for noncompliance may appeal, under certain conditions, to a federal administrative law judge ("ALJ"). *See* 42 C.F.R. § 498.5 (2013). A dissatisfied party may further appeal the ALJ's decision to the United States

Department of Health and Human Service's Departmental Appeals Board (the "Board"). *See* 42 C.F.R. § 498.80 (2013).

Utilizing this process, Britthaven appealed CMS' decision to an ALJ, and the ALJ issued a decision affirming CMS' findings of noncompliance with two Medicare regulations, which resulted in immediate jeopardy to resident health and safety at the facility (the "ALJ decision"). Britthaven then appealed a single legal issue to the Board, and the Board issued a decision affirming the ALJ decision (the "Board decision").

In arguing that the trial court erred in excluding evidence of the surveys and the ALJ and Board decisions, plaintiff argues that the evidence was admissible to prove causation under Rule 803(8)(c). We need not address whether such evidence, if relevant, would be admissible under the Rules of Evidence because review of the record shows that plaintiff never argued to the trial court that the exhibits were admissible *to show causation*, the sole argument made on appeal.[2]

---

[2]We note that our review of the record has revealed no ruling by the trial court on the admissibility of the ALJ and Board decisions. Although plaintiff contends that, when ruling upon the admissibility of the "surveys" during the 15 and 16 August 2011 pretrial hearings, the trial court was, in fact, ruling upon the admissibility of not only the surveys, but also the ALJ and Board decisions, the specific arguments of the parties at trial and the trial court's rulings indicate that references to "surveys" were limited to the surveys alone. By failing to obtain a ruling from the trial court on the admissibility of the ALJ and Board decisions, plaintiff failed

On 9 August 2011, defendants filed a motion in limine seeking to exclude evidence of the findings and conclusions from the surveys, while on 10 August 2011, plaintiff filed a motion requesting that the trial court judicially notice and "admit[] into evidence" the "surveys and ALJ opinions relating to Ms. Barthazon's transfer by Mack Jones." Plaintiff asserted that the records were "important public documents," but made no argument that they were relevant to causation in the written motion for judicial notice.

The trial court heard arguments on defendants' motion in limine at a 15 August 2011 pretrial hearing. At the hearing, the parties only argued regarding whether the surveys were admissible to show the applicable standard of care. Plaintiff did not argue at the hearing that the surveys were admissible to show causation. The trial court announced at the hearing that it was "inclined to exclude" the surveys.

At a continuation of the hearing on the following day, 16 August 2011, the court again addressed the admissibility of the

---

to preserve that issue for appeal. N.C.R. App. P. 10(a)(1) (requiring, in order to preserve issue for appeal, that "complaining party . . . obtain a ruling upon the party's request, objection, or motion"). Nonetheless, even assuming that the trial court ruled that the ALJ and Board decisions were inadmissible, we hold that, as with the surveys, plaintiff failed to preserve the specific argument made on appeal since she failed to argue at trial that the ALJ and Board decisions were admissible to show causation.

surveys. Consistent with the fact that the parties had debated only the relevance of the surveys to the standard of care, the court explained that Rule 702, which addresses expert testimony regarding the standard of care, "gave me some pause." At the 16 August 2011 hearing, plaintiff again failed to argue that the surveys and the ALJ and Board decisions were admissible to show causation. The trial court deferred any ruling on plaintiff's motion for judicial notice.[3]

Plaintiff filed a motion for reconsideration of the rulings on defendants' motion in limine on or about 19 August 2011. The motion addressed admissibility of the "survey documents" and asserted no arguments pertaining to causation. Plaintiff has pointed to -- and we have found -- no ruling on the motion to reconsider.

Thus, although plaintiff argued, both in support of her motion for judicial notice and in opposition to defendants' motion in limine, that the surveys were admissible as evidence, plaintiff argued only that the surveys were admissible to show the applicable standard of care and any breach of that standard by defendants. In addition, we have found no indication in the

---

[3]The record on appeal does not contain written orders addressing either defendant's motion in limine or plaintiff's motion for judicial notice.

record that plaintiff argued at trial that the surveys should be admitted to prove causation.[4]

Rule 10(a)(1) of the Rules of Appellate Procedure provides that "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the *specific grounds* for the ruling the party desired the court to make . . . ." (Emphasis added.) The purpose of the rule "'is to require a party to call the [trial] court's attention to a matter upon which he or she wants a ruling before he or she can assign error to the matter on appeal.'" *Lathon v. Cumberland Cnty.*, 184 N.C. App. 62, 68, 646 S.E.2d 565, 568 (2007) (quoting *Reep v. Beck*, 360 N.C. 34, 37, 619 S.E.2d 497, 499 (2005)). Because plaintiff did not specifically argue to the trial court that the surveys should be

---

[4]Plaintiff filed a motion, which was denied by the trial court, requesting that the trial court apply the doctrine of collateral estoppel to findings made in the ALJ decision as affirmed by the Board decision, including findings related to causation. This motion did not, however, address the admissibility of the surveys, the ALJ decision, or the Board decision at trial. *See Rymer v. Estate of Sorrells*, 127 N.C. App. 266, 268, 488 S.E.2d 838, 840 (1997) ("'Collateral estoppel precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding.'" (quoting *In re McNallen*, 62 F.3d 619, 624 (4th Cir. 1995))). Consequently, the collateral estoppel motion was not sufficient to preserve the issue raised on appeal.

admitted as relevant to causation, plaintiff did not preserve this issue for appeal.

We note, however, that plaintiff's motion for a new trial sought a new trial based upon the court's exclusion of the surveys and ALJ and Board decisions since findings in those documents supported plaintiff's "core allegations" at trial. Among other findings, the motion specifically referenced the ALJ's findings of fact regarding causation. Even if we assume -- although it is not entirely clear from the record -- that plaintiff was making the same argument in the motion for a new trial as made on appeal, the motion for a new trial, standing alone, is not sufficient to preserve the issue for appeal.

Rule 10(a)(1) of the Rules of Appellate Procedure provides that in order to preserve an issue for appellate review, a party must present a "*timely* request, objection, or motion," and an issue raised for the first time in a post-trial motion is not considered a timely request sufficient for appellate preservation. (Emphasis added.) *See Hanna v. Brady*, 73 N.C. App. 521, 528, 327 S.E.2d 22, 26 (1985) ("We do not feel that a motion for a new trial made under Rule 59 [of the Rules of Civil Procedure] is intended to serve as a substitute for the obligation of counsel to timely object to the jury instructions. The obvious purpose behind the requirement of a timely objection

is to avoid the need to completely retry a case when a judge could merely correct the instructions.").

However, even if plaintiff had preserved her causation argument for appeal, plaintiff does not challenge in her brief the trial court's ruling, pursuant to Rule 403 of the Rules of Evidence, that any probative value of the surveys was substantially outweighed by the danger of confusion of the issues at trial. *See id.* ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of . . . confusion of the issues . . . ."). Because plaintiff has made no showing that the trial court abused its discretion in excluding the evidence under Rule 403, *see State v. Whaley*, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008) ("We review a trial court's decision to exclude evidence under Rule 403 for abuse of discretion."), she cannot show prejudice from the error she asserts on appeal.

In sum, plaintiff failed to argue at trial that the surveys and the ALJ and Board decisions were admissible to show causation and, consequently, failed to preserve that issue for review. Moreover, plaintiff has not shown prejudice because she has failed, on appeal, to challenge the trial court's ruling excluding the evidence under Rule 403.

II

Plaintiff next argues that even if the surveys and the ALJ and Board decisions were not otherwise admissible as evidence, the trial court erred by not allowing plaintiff to cross-examine defendants' expert witness on causation, Dr. Alexander Doman, with those documents. Plaintiff contends that because Dr. Doman stated on voir dire that he had taken the documents into consideration when reaching his opinions, plaintiff was entitled to cross-examine Dr. Doman with the surveys and the ALJ and Board decisions.

Rule 705 of the Rules of Evidence provides that an expert "may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless an adverse party requests otherwise, in which event the expert will be required to disclose such underlying facts or data on direct examination or voir dire before stating the opinion." Rule 705 states further: "The expert may in any event be required to disclose the underlying facts or data on cross-examination."

In this case, plaintiff questioned Dr. Doman on voir dire regarding whether Dr. Doman had reviewed the surveys:

> Q. Have you taken into account in this case, in arriving at your opinions, the conclusions of the interdisciplinary survey team that cited the nursing home in this

case for multiple violations of the federal regulations as it related to the care of Mary Lou Barthazon?

A.   Yes.

Q.   What were the opinions that the State arrived at in that regard?

A.   That there were some deficiencies.

Q.   And on what basis do you conclude that that was in error?

A.   I'm not expressing an opinion regarding federal investigations.   I'm expressing opinions today regarding the cause of the fractures.

Q.   What qualifies you to express opinions about the basis for confusion about these issues as opposed to merely offering your opinions about the cause of the injuries?

A.   There is no difference.   . . .   I'm expressing an opinion as to the cause of the injury; and someone else is expressing the opinion that's different from my opinion, apparently.   People -- the jury can reach their conclusion as to which opinion . . . they choose to accept.

Plaintiff then asked the court to permit cross-examination of Dr. Doman before the jury regarding the content of the surveys:

> [PLAINTIFF'S COUNSEL]: In view of the fact that the witness has indicated that he has taken into account the survey issued by the State and the conclusions reached therein with respect to his opinion, respectfully I ask that I be permitted to query him in the presence of the jury on the contents of the survey.

THE COURT: Denied *at this point*.

(Emphasis added.)

On appeal, plaintiff asserts that the trial court erred in excluding evidence of the surveys *and the ALJ and Board decisions* because "Dr. Doman admitted on *voir dire* that he considered and reviewed the surveys *and the ALJ record* in forming his opinions." However, plaintiff questioned Dr. Doman only as to whether he had taken into account "the conclusions of the interdisciplinary survey team" and "the State." He did not testify whether he considered the ALJ and Board decisions. Plaintiff then moved the court only for permission to cross-examine Dr. Doman with "the survey issued by the State and the conclusions reached therein." Since plaintiff did not ask the court for leave to cross-examine Dr. Doman with the ALJ and Board decisions, plaintiff has failed to preserve for appeal any argument regarding cross-examination of Dr. Doman with those records. N.C.R. App. P. 10(a)(1).

With respect to the surveys, we initially observe that "'an expert may be . . . cross-examined with respect to material reviewed by the expert but upon which the expert does not rely.'" *Dep't of Transp. v. Blevins*, 194 N.C. App. 637, 644, 670 S.E.2d 621, 626 (quoting *Williams v. CSX Transp., Inc.*, 176 N.C. App. 330, 336, 626 S.E.2d 716, 723 (2006)), *aff'd per*

*curiam as modified on other grounds sub nom. N.C. Dep't of Transp. v. Blevins*, 363 N.C. 649, 686 S.E.2d 134 (2009). Dr. Doman's voir dire testimony indicating he had taken into account the surveys was, therefore, sufficient to lay a foundation for plaintiff to cross-examine him regarding the contents of the surveys.

However, despite laying a sufficient foundation at the trial level for use of the evidence, plaintiff then failed to make any offer of proof as to what Dr. Doman's testimony would have been before the jury if cross-examined regarding the surveys. "'In order to preserve an argument on appeal which relates to the exclusion of evidence, including evidence solicited on cross-examination, the defendant must make an offer of proof so that the substance and significance of the excluded evidence is in the record.'" *State v. Ryals*, 179 N.C. App. 733, 740-41, 635 S.E.2d 470, 475 (2006) (quoting *State v. Ginyard,* 122 N.C. App. 25, 33, 468 S.E.2d 525, 531 (1996)).

Without an offer of proof -- which could have been accomplished by plaintiff's counsel asking during voir dire the questions that he wanted to ask before the jury -- we cannot determine whether plaintiff was prejudiced by the trial court's ruling. As our Supreme Court has explained, "'the essential content or substance of the witness' testimony must be shown

before we can ascertain whether prejudicial error occurred.'" *State v. Jacobs*, 363 N.C. 815, 818, 689 S.E.2d 859, 861 (2010) (quoting *State v. Raines*, 362 N.C. 1, 20, 653 S.E.2d 126, 138 (2007)). *See also State v. Williams*, 355 N.C. 501, 534-35, 565 S.E.2d 609, 629 (2002) (holding defendant failed to preserve for appeal argument that trial court erroneously sustained State's objection to question during cross-examination of witness when, on voir dire, defendant failed to make offer of proof as to what witness would have testified to on cross-examination had objection been overruled).

## III

Plaintiff also argues that several other "developments in the conduct of the trial" made evidence of the surveys and the ALJ and Board decisions admissible. Specifically, plaintiff argues that five statements by defense counsel during jury selection -- four asserting that no one had decided whether there was any truth in plaintiff's allegations and one asserting that no one had made any decision about this case -- were untrue in light of the surveys and the ALJ and Board decisions. Plaintiff also argues that defense counsel's opening statement incorrectly framed plaintiff's allegations as, in plaintiff's words, "those of hysterical, over-reacting family members" when

the evidence of the surveys and the ALJ and Board decisions showed her allegations to be sound.

Plaintiff did not, however, argue at trial that the jury selection questions or defendants' opening statement opened the door for admission of the surveys and the ALJ and Board decisions. Although plaintiff did argue in her motion for a new trial that defendants' jury selection statements opened the door for admissibility of the evidence, her argument made for the first time in that motion did not give the trial court an opportunity to revisit, during trial, its pretrial ruling excluding the surveys or to make, during trial, a ruling on whether to exclude the ALJ and Board decisions. The argument in her motion for a new trial did not, therefore, preserve the issue for appeal. *See Hanna*, 73 N.C. App. at 528, 327 S.E.2d at 26.

Plaintiff additionally contends that prejudice to her from exclusion of the surveys and the ALJ and Board decisions was compounded by defense counsel's closing argument assertion that Mr. Jones was fired as a scapegoat for not transferring Ms. Barthazon with a mechanical lift. Plaintiff objected to defendants' closing argument in front of the jury, asserting that the challenged statement "misstates the evidence," and the trial court sustained the objection.

Because plaintiff's argument on appeal regarding whether the evidence was erroneously excluded was not preserved for appeal, the question whether the exclusion prejudiced plaintiff is immaterial. Moreover, the trial court sustained the objection, and plaintiff did not request a limiting instruction from the court or seek a mistrial. *See Smith v. Hamrick*, 159 N.C. App. 696, 699, 583 S.E.2d 676, 679 (2003) ("[T]his Court has held that when an objection is made to an improper argument of counsel and the court sustains the objection, that court does not err by failing to give a curative instruction if one is not requested.").

Given plaintiff's failure to request a limiting instruction and failure to move for a mistrial on this issue, we are not persuaded by plaintiff's argument that she was unduly prejudiced even though the trial court sustained her objection. *See State v. Barber*, 93 N.C. App. 42, 49, 376 S.E.2d 497, 501 (1989) (rejecting argument defendant was entitled to new trial based on prosecutor's improper closing argument since defendant failed to request limiting instruction when court sustained objection to argument and since evidence against defendant was overwhelming).

IV

Plaintiff's final argument is that "[t]he undue prejudice to Plaintiff's case by the exclusion of [the surveys and the ALJ

and Board decisions] [were] compounded and made exponentially greater when combined with the trial court's decision to place causation in a verdict sheet all by itself and outside the context of negligence by asking whether any 'conduct' caused injury to Mrs. Barthazon." While, as with the above remarks by defense counsel, the question of prejudice is not material given our determination that plaintiff failed to preserve at trial her arguments regarding admissibility, plaintiff's brief arguably challenges the propriety of the trial court's verdict sheet.

It is well established that "[t]he form and the number of issues submitted to the jury is within the trial court's discretion." *Godfrey v. Res-Care, Inc.*, 165 N.C. App. 68, 80, 598 S.E.2d 396, 404 (2004). In this case, the verdict sheet included eight interrogatories. The first two interrogatories appeared as follows:

<u>ISSUE ONE</u>

Was any conduct of defendant Britthaven, Inc. a proximate cause of any injury to, or the death of, Mary Lou Barthazon?

<u>ANSWER</u>: _____
(If you answer Issue One "Yes," you are to proceed to Issue Two. If you answer Issue One "No," stop here. You have reached your verdict.)

<u>ISSUE TWO</u>

Was any injury to, or the death of, Mary Lou Barthazon proximately caused by any medical negligence of defendant Britthaven, Inc.?

Answer: _____
(Proceed to Issue Three.)

The remaining six interrogatories asked: (1) whether any injury or death to Ms. Barthazon was caused by any "corporate negligence" of Britthaven; (2) whether Ms. Barthazon's death was proximately caused by any medical negligence of Britthaven; (3) what amount, if any, was Ms. Barthazon's estate entitled to recover by reason of her death; (4) other than injuries resulting in her death, was any injury to Ms. Barthazon proximately caused by any medical or corporate negligence of Britthaven; (5) what amount, if any, was Ms. Barthazon's estate entitled to recover for injury to Ms. Barthazon other than injuries resulting in her death; and (6) did Hillco control Britthaven with regard to the acts or omissions that injured Ms. Barthazon.

The jury answered the first interrogatory in the negative and, accordingly, proceeded no further. Plaintiff contends that by making the causation issue the first interrogatory, the trial court placed "substantial and unwarranted emphasis" on causation. She further asserts that the verdict sheet's organization harmed her since it allowed the jury to decide causation first, without first addressing duty and breach, and

therefore "truncated" the "collective sharing process that allows for correction of errors in memory or factual errors and that may lead to changes of opinion or strengthening of initial opinions."

We initially note that plaintiff cites no authority in support of her arguments. However, Rule 28(b)(6) of the Rules of Appellate Procedure provides that "[t]he body of the argument . . . shall contain citations of the authorities upon which the appellant relies." Because of the omission of any authority, this Court would be entitled under the Rules of Appellate Procedure to decline to address this issue. *See Works v. Works*, ___ N.C. App. ___, ___, 719 S.E.2d 218, 222 (2011) ("Moreover, we decline to consider the remaining assertions raised in wife's brief for which wife failed to present supporting legal authority. *See* N.C.R.App. P. 28(b)(6).").

In any event, this Court has previously rejected the argument that a defendant was prejudiced by the "order of the charges on the verdict form" when the form "began with the most serious charge and listed alternative verdicts in descending order of severity, contrary to defendant's request that the possible verdicts be listed in the opposite order." *State v. Bates*, 70 N.C. App. 477, 480, 319 S.E.2d 683, 685 (1984), *aff'd on other grounds*, 313 N.C. 580, 330 S.E.2d 200 (1985). The

Court in *Bates* reasoned that the defendant "cite[d] no authority in support of this contention and we know of none." *Id.*

Here, we similarly find plaintiff's unsupported argument regarding the order of interrogatories on the verdict sheet to be unpersuasive. *See also State v. Watson*, 169 N.C. App. 331, 339, 610 S.E.2d 472, 478 (2005) ("There is no rule in North Carolina indicating the order choices must be listed on verdict sheets.").

Plaintiff additionally argues that the first interrogatory -- asking whether any "conduct" of Britthaven caused Ms. Barthazon's injury or death -- was improper since "conduct" is not part of the three-part negligence inquiry of duty, breach, and causation. As with the prior argument regarding the order of the interrogatories, plaintiff cites no authority for this contention. Nevertheless, we fail to see how the wording of the first interrogatory prejudiced plaintiff. We find that the language -- asking broadly whether any "conduct" of Britthaven caused Ms. Barthazon injury -- was actually helpful to plaintiff since it did not limit the question to one or more acts of negligence but rather allowed the jury to consider any conduct at all of Britthaven. Plaintiff has not, therefore, shown prejudicial error.

No error.

Judges ELMORE and DILLON concur.

Report per Rule 30(e).